64 A.3d 579

DEPOLINK COURT REPORTING & LITIGATION SUPPORT SER-
VICES, PLAINTIFF–RESPONDENT, v. DAVID S. ROCHMAN,
ESQ., DEFENDANT/THIRD–PARTY PLAINTIFF–APPELLANT,
v. J. ROBERT MORGAN AND JOHNSON, MORGAN & WHITE,
THIRD–PARTY DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 18, 2013—Decided April 26, 2013.

Before Judges SABATINO, FASCIALE [1] and CARROLL.

*David S. Rochman,* appellant, argued the cause pro se.

*Stephen H. Barrett* argued the cause for respondents J. Robert Morgan and Johnson, Morgan & White (*Mattleman, Weinroth & Miller, PC,* attorneys; *Mr. Barrett* and *Michael R. Mignogna,* on the brief).

The opinion of the court was delivered by

CARROLL, J.S.C. [temporarily assigned].

Defendant appeals from that portion of an April 2, 2012 order for summary judgment dismissing his third-party complaint alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 *U.S.C.A.* § 1692 to –1692o, the New Jersey Consumer Fraud Act (CFA), *N.J.S.A.* 56:8–1 to –20, and common law fraud. We affirm.

I

The following facts derive from evidence the parties submitted in their summary judgment motions, viewed in the light most favorable to defendant. *See R.* 4:46–2(c); *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995).

---

[1] Judge Fasciale did not participate in oral argument, but has, with the consent of counsel, been added to the panel deciding this matter.

Plaintiff, DepoLink Court Reporting & Litigation Support Services, provides court reporting and litigation support services. Defendant, David S. Rochman, Esq., is a New Jersey attorney. On July 15, 2010, defendant utilized plaintiff's court reporting services to take the depositions of two witnesses in a pending Law Division action. Four other attorneys involved in that litigation attended the depositions. While there, defendant and all four attorneys signed plaintiff's transcript order form (form). The form provided that:

**PLEASE READ:** I hereby agree to pay all normal and customary preparation and delivery charges in full to DepoLink Court Reporting. I also agree to place the invoice in line for prompt payment. I understand that payment terms are net [thirty] days and a 1.5% per month late fee may apply. *DepoLink reserves the right to request pre-payment by credit card or **C.O.D.** prior to transcript delivery for any out[-]of[-]state law firm with whom we do not have payment history.* [ (Bold in original) ]; [ (Emphasis added).]

According to plaintiff, it prepared the transcripts, and on July 22, 2010, invoiced defendant for them. Defendant received the transcripts on July 27, 2010. Defendant retained the transcripts; however, he refused to pay plaintiff's invoice. Plaintiff subsequently retained a collection agency, third-party defendant Johnson, Morgan & White (collection agency), to assist in recovering the cost for the transcripts. The collection agency's efforts were similarly unsuccessful.

Defendant certified to the motion judge that he was presented with the form at the conclusion of the deposition, but that there was no negotiation nor any agreement on his part to its payment terms. Within a week he received a call from plaintiff "advising that they were unilaterally changing the terms of their agreement," and requesting payment on a C.O.D. basis.[2] Defendant rejected those terms and advised plaintiff that "they could keep their transcripts." According to defendant, he continued to negotiate with plaintiff, but no agreement could be reached.

---

[2] Although defendant apparently lacked a "payment history" with plaintiff, he is not an "out-of-state law firm" covered by the C.O.D. provision in the transcript order form.

Subsequently, defendant was contacted by the collection agency, which he claims misrepresented that it was a law office, and threatened him with an ethics complaint and criminal prosecution. Defendant refused to pay the bill for the transcripts or a reduced amount for the court reporter's time in taking the depositions. Defendant maintained that "the rate [and] charges sought [by plaintiff] are usurious, they are beyond customary and reasonable and they were never agreed to at any point in time."

In October 2011, plaintiff filed this lawsuit in the Law Division, Special Civil Part, for the transcript costs. Defendant filed a counterclaim, as well as a third-party complaint against the collection agency and one of its principals, J. Robert Morgan, alleging common law fraud, and violations of the CFA and FDCPA. In February 2012, plaintiff and the collection agency subsequently moved for summary judgment. Defendant cross-moved to dismiss their pleadings for failure to answer interrogatories. On April 2, 2012, the motion judge, without oral argument, entered judgment against defendant for $4,570.30, representing the full cost of the transcripts plus the 1.5% monthly charge which the judge found was due plaintiff under the payment agreement. At the same time, defendant's counterclaim and third-party complaint were both dismissed.

In the judge's March 26, 2012 written opinion, he found that the transcript form, which defendant indisputably signed, was very clear and simple. It specifically allowed plaintiff to seek payment from defendant on a C.O.D. basis. The judge found that there was no "unilateral changing" of the contract, as defendant maintained. The judge ruled that the transcripts, which were ordered by defendant, were properly prepared by plaintiff and sent to him. Defendant retained the transcripts, and was responsible for payment of their costs.

Defendant appeals from the April 2, 2012 judgment. While the appeal was pending, plaintiff and defendant settled their dispute, leaving only the dismissal of defendant's third-party complaint against the collection agency and Morgan for our consideration.

## II

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. *Coyne v. N.J. Dep't of Transp.*, 182 *N.J.* 481, 491, 867 *A.*2d 1159 (2005); *Tymczyszyn v. Columbus Gardens*, 422 *N.J.Super.* 253, 261, 27 *A.*3d 1253 (App.Div.2011), *certif. denied*, 209 *N.J.* 98, 35 *A.*3d 681 (2012). Thus, we consider, as the trial judge did, " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A.*, 189 *N.J.* 436, 445–46, 916 *A.*2d 440 (2007) (quoting *Brill, supra*, 142 *N.J.* at 536, 666 *A.*2d 146). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." *R.* 4:46–2(c). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." *Massachi v. AHL Servs., Inc.*, 396 *N.J.Super.* 486, 494, 935 *A.*2d 769 (App.Div.2007), *certif. denied*, 195 *N.J.* 419, 949 *A.*2d 847 (2008) overruled in part on other grounds, *Wilson ex rel. Manzano v. City of Jersey City*, 209 *N.J.* 558, 563, 39 *A.*3d 177 (2012). We review issues of law de novo and accord no deference to the trial judge's conclusions on issues of law. *Zabilowicz v. Kelsey*, 200 *N.J.* 507, 512–13, 984 *A.*2d 872 (2009). Applying these standards, we conclude that the trial judge properly granted summary judgment against defendant.

## A

We first consider defendant's contention that the motion judge erred in his failure to find that the collection agency violated the FDCPA, 15 *U.S.C.A.* § 1692 to –1692o. As our Supreme Court has observed:

Congress enacted the FDCPA in 1968 to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 *U.S.C.A.* § 1692(e); *accord* S.Rep. No. 95–382, at 1–2 (1977), *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1696 (stating FDCPA's purpose is to "protect consumers from a host of unfair, harassing, and deceptive debt collection practices"). Designed "to have a broad remedial scope," *Hamilton v. United Healthcare of La., Inc.*, 310 *F.*3d 385, 392 (5th Cir.2002) (citations omitted), the Act protects consumers, or "natural person[s] obligated to ... pay any debt," 15 *U.S.C.A.* § 1692a(3), by creating procedural mandates for debt collection and prohibiting objectionable debt collection practices. Notably, the FDCPA prohibits a debt collector from, among other conduct, using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 *U.S.C.A.* § 1692e, and using "unfair or unconscionable means to collect or attempt to collect any debt." 15 *U.S.C.A.* § 1692f.

[*Hodges v. Sasil Corp.*, 189 *N.J.* 210, 222, 915 *A.*2d 1 (2007).]

The FDCPA makes it unlawful for a debt collector to use unfair or unconscionable means to collect a debt. A "debt" within the meaning of the FDCPA is:

[A]ny obligation or alleged obligation of a consumer to pay money *arising out of a transaction* in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes,* whether or not such obligation has been reduced to judgment.

[15 *U.S.C.A.* § 1692a(5) (emphasis added).]

The statutory definition of "debt" is clear; it is "not beset with internal inconsistencies [or] burdened with vocabulary that escapes common understanding." *Hodges, supra,* 189 *N.J.* at 223, 915 *A.*2d 1 (citing *Hamilton, supra,* 310 *F.*3d at 391). Although this collection case obviously involves a debt, the pivotal legal question under the statute is whether the obligation constitutes a "consumer" debt. The threshold inquiry therefore is whether defendant incurred the debt for personal, family, or household expenses. We conclude that he did not. Rather, plaintiff provided the court reporting services for use by defendant's business. Defendant does not deny this business purpose. In his certification submitted in opposition to the summary judgment motion, defendant stated that he took the depositions "on behalf of Marga-

ret Dolce." [3]

The sole argument that defendant advances is that the FDCPA should apply to this debt, because he is a sole proprietor; he is a "consumer" under the Act. No reported cases in our jurisdiction have decided this issue. However, other courts have explicitly held that sole proprietors do not constitute "consumers" for purposes of the Act simply by virtue of that status. *See, e.g., Slenk v. Transworld Sys., Inc.,* 236 *F.*3d 1072, 1076 (9th Cir.2001); *Beaton v. Reynolds, Vogt & Morgan, P.L.L.C.,* 986 *F.Supp.* 1360, 1362 (W.D.Okla.1998). In elaborating upon this issue, the *Slenk* court noted:

> [Plaintiff] contends that any debt procured by a sole proprietor necessarily constitutes a consumer debt for purposes of the FDCPA, as stated by the court in *Sluys v. Hand,* 831 *F.Supp.* 321, 323 (S.D.N.Y.1993). [Plaintiff's] reliance on *Sluys* is misplaced. The opinion in *Sluys* has been sharply criticized—and rightly so—by courts and academic commentators due to its abandonment of the FDCPA's definition of a consumer debt. The United States District Court for the Western District of Oklahoma in *Beaton v. Reynolds, Ridings, Vogt and Morgan, P.L.L.C.,* 986 *F.Supp.* 1360 (W.D.Okla.1998), found the result in *Sluys* to be "plainly wrong," stating that "to the extent *Sluys* stands for the proposition that the Act does not require proof [that a transaction was entered into primarily for personal, family, or household purposes], the decision is in error." *Id.* at 1362.
>
> The foregoing sentiment has been echoed in legal publications, which suggest that "the [*Sluys* ] court completely disregarded the statutory definition of 'debt.' For this reason, ... the case is not good law, and is contrary to the statutory language of the Act." Louis Rosenberg, *Complying With the Fair Debt Collection Practices Act,* 40–DEC Res Gestae 24, 25 n. 22 (1996). We agree. Therefore, because the holding in *Sluys* circumvents the statutory requirements for proving a consumer debt as required under the FDCPA, we deem it unworthy of credence.
>
> [*Slenk, supra,* 236 *F.*3d at 1076.]

Here, defendant alleges that he was exposed to abusive debt collection practices by the collection agency. Specifically, he alleges that the collection agency misrepresented itself as a law office, and threatened defendant with an ethics complaint and a criminal charge if he failed to pay for the court reporter's services.

---

[3] Dolce was the plaintiff in the Law Division litigation, in which the depositions were taken. Although Dolce was defendant's client, she apparently was not billed by plaintiff for the transcript herself and she has not participated in the present litigation.

Nothing in our decision is intended to condone the collection agency's actions if these allegations are true. However, even if true, the threshold legal issue is whether defendant has raised a genuine issue of material fact as to whether the cost for the transcripts is a consumer debt, as that term is defined by the FDCPA. For the above reasons we hold that he has not, and that the motion judge properly granted summary judgment dismissing defendant's FDCPA claim.

B

Defendant next argues that the collection agency engaged in common law fraud, and that the motion judge erred in dismissing this claim on summary judgment. Specifically, defendant maintains that plaintiff hired the collection agency to engage in deceptive commercial practices in seeking payment for the deposition transcripts. These practices included an initial misrepresentation by the collection agency that it was a law firm, which it then retracted, and threats by the agency that it would invoke criminal prosecution and file an ethics complaint, in an effort to extract payment from defendant.

In order to prevail on a common law fraud claim, plaintiff must show that defendant: (1) made a representation or omission of a material fact; (2) with knowledge of its falsity; (3) intending that the representation or omission be relied upon; (4) which resulted in reasonable reliance; and that (5) plaintiff suffered damages. *Jewish Ctr. of Sussex Cnty. v. Whale*, 86 *N.J.* 619, 624, 432 *A.*2d 521 (1981). Equitable fraud is similar to legal fraud; however, the plaintiff need not establish the defendant's scienter, that is, defendant's knowledge of the falsity and intent to obtain an undue advantage. *Enright v. Lubow*, 202 *N.J.Super.* 58, 72, 493 *A.*2d 1288 (App.Div.1985), *certif. denied*, 104 *N.J.* 376, 517 *A.*2d 386 (1986). In either case, plaintiff must prove each element by "clear and convincing evidence." *Stochastic Decisions, Inc. v. DiDomenico*, 236 *N.J.Super.* 388, 395, 565 *A.*2d 1133 (App.Div. 1989), *certif. denied*, 121 *N.J.* 607, 583 *A.*2d 309 (1990).

Here, even viewing the allegations of common law fraud in the light most favorable to defendant, it is undisputed that defendant rejected the collection agency's attempts to collect the debt, and that, as of the time he filed his third-party complaint, he had not yet made any payment to either plaintiff or the agency. As a result, defendant never relied on the truth of any of the statements the collection agency made, and never suffered any damage due to such reliance. Defendant's inability to demonstrate reliance on the collection agency's statements, to his detriment, is fatal to his claim for common law fraud, as the motion judge properly recognized.

### C

■ Defendant next maintains that the same conduct by the collection agency, which formed the basis of his common law fraud claim, also constitutes a violation of the CFA, and that the motion judge likewise erred in dismissing this claim on summary judgment. We disagree.

The CFA makes the following acts unlawful, in connection with the sale or advertisement of merchandise or real estate:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.
>
> [*N.J.S.A.* 56:8–2.]

■ "The term 'merchandise' shall include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." *N.J.S.A.* 56:8–1(c). "Under this expansive definition of 'merchandise,' the provision of shorthand reporting services and sale of transcripts of depositions is subject to the [CFA]." *Quigley v. Esquire Deposition Serv.*, 400 *N.J.Super.* 494, 505, 948 *A.*2d 665 (App.Div.2008).

■ Violations of the CFA can arise under three different categories: (1) "[a]n affirmative misrepresentation, even if unaccompanied by knowledge of its falsity or an intention to deceive"; (2) "[a]n omission or failure to disclose a material fact, if accompanied by knowledge and intent"; and (3) " 'violations of specific regulations promulgated under the [CFA],' " which are reviewed under strict liability. *Monogram Credit Card Bank of Ga. v. Tennesen*, 390 *N.J.Super.* 123, 133, 914 *A.*2d 847 (App.Div.2007) (internal citations omitted).

Here, defendant has not cited any regulations under the CFA which either the plaintiff or the collection agency violated. While defendant points to the collection agency's violation of the FDCPA, it is not a regulation under the CFA. Moreover, we have already determined that the FDCPA is inapplicable to this business debt.

■ Additionally, as noted, the CFA prohibits the use of unconscionable commercial practices, deception, fraud, and misrepresentations "in connection with the sale or advertisement of any merchandise." *N.J.S.A.* 56:8–2. "Sale" is defined as "any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute." *N.J.S.A.* 56:8–1(e). Under the CFA, "[t]he misrepresentation has to be one which is material to the transaction ... made to induce the buyer to make the purchase." *Gennari v. Weichert Co. Realtors*, 148 *N.J.* 582, 607, 691 *A.*2d 350 (1997).

■ The legislative intent in enacting the CFA was to curtail the "sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." *Daaleman v. Elizabethtown Gas Co.*, 77 *N.J.* 267, 271, 390 *A.*2d 566 (1978). The Act focuses on compelling "those who sell consumer goods and services to the public to develop practices that will minimize consumer fraud." *Marascio v. Campanella*, 298 *N.J.Super.* 491, 501, 689 *A.*2d 852 (App.Div.1997).

Here, the CFA is inapplicable to defendant's claim against the collection agency because any misrepresentations by the collection agency, even if made, were not in connection with the sale of merchandise to defendant. The alleged prohibited conduct occurred later on, when the collection agency was attempting to collect the debt from defendant. The collection agency's contacts with defendant were not an offer to sell merchandise, nor did defendant buy anything from the collection agency. Debt collection activities on behalf of a third party who may have sold merchandise are not unconscionable activities "in connection with the sale" of merchandise. *See, e.g., Chulsky v. Hudson Law Offices, P.C.,* 777 *F.Supp.*2d 823, 847 (D.N.J.2011) (holding that the CFA does not cover the debt collection activities of a third party that purchases consumer debt); *Joe Hand Promotions, Inc. v. Mills,* 567 *F.Supp.*2d 719, 723–24 (D.N.J.2008) (finding that a letter demanding payment of a settlement did not fall within the CFA because plaintiff was not induced to purchase merchandise or real estate).

We recognize that the CFA has been characterized as one of the strongest consumer protection laws in the nation, *see Bosland v. Warnock Dodge, Inc.,* 197 *N.J.* 543, 555, 964 *A.*2d 741 (2009), with a history "of constant expansion of consumer protection," *Gennari, supra,* 148 *N.J.* at 604, 691 *A.*2d 350. Because the CFA is remedial, it should be construed liberally in favor of consumers. *Cox v. Sears Roebuck & Co.,* 138 *N.J.* 2, 15, 647 *A.*2d 454 (1994). Nonetheless, a consumer's standing to recover under the CFA is not without limits.

The statutory provision circumscribing private causes of action, *N.J.S.A.* 56:8–19, provides that in order to have standing to sue under the CFA a consumer must suffer an "ascertainable loss of moneys or property" as a result of a CFA violation. *Weinberg v. Sprint Corp.,* 173 *N.J.* 233, 250, 801 *A.*2d 281 (2002); *see also Laufer v. U.S. Life Ins. Co.,* 385 *N.J.Super.* 172, 186, 896 *A.*2d 1101 (App.Div.2006). Given the enhanced remedies of treble damages and counsel fees available under the CFA, "[t]he ascer-

tainable loss requirement operates as an integral check upon the balance struck by the CFA between the consuming public and sellers of goods." *Thiedemann v. Mercedes–Benz USA, LLC,* 183 *N.J.* 234, 251, 872 *A.*2d 783 (2005).

Although the term "ascertainable loss" is not defined in the CFA, our Supreme Court has ascribed to it the common notion of "ascertain," i.e., "to make (a thing) certain; establish as a certainty; determine with certainty." *Thiedemann, supra,* 183 *N.J.* at 248, 872 *A.*2d 783 (2005) (quoting *Webster's Third Int'l. Dictionary* 126 (1981)). While the loss does not have to have been paid out of pocket by the consumer, it still must be "quantifiable or measurable." *Ibid.* An "estimate of damages, calculated within a reasonable degree of certainty," will suffice. *Id.* at 249, 872 *A.*2d 783 (quoting *Cox, supra,* 138 *N.J.* at 22, 647 *A.*2d 454 (1994)). The evidence of loss must not be "hypothetical or illusory." *Id.* at 248, 872 *A.*2d 783.

Mere inconvenience to a consumer is not enough to demonstrate an ascertainable loss under the Act. *Perkins v. Daimler-Chrysler Corp.,* 383 *N.J.Super.* 99, 109, 890 *A.*2d 997 (App.Div. 2006) (citing *Thiedemann, supra,* 183 *N.J.* at 251–52, 872 *A.*2d 783). Further, our courts have long recognized that "non-economic damages are not recoverable under the CFA." *Cole v. Laughrey Funeral Home,* 376 *N.J.Super.* 135, 144, 869 *A.*2d 457 (App.Div. 2005) (citing *Gennari, supra,* 148 *N.J.* at 612, 691 *A.*2d 350 (1997)).

The Court in *Thiedemann* recognized a plaintiff's burden of demonstrating such a "quantifiable or measurable" loss in order to present his CFA claims to a jury. The Court instructed that a private plaintiff under the CFA "must produce evidence from which a factfinder could find or infer that the plaintiff suffered *an actual loss.*" *Thiedemann, supra,* 183 *N.J.* at 248, 872 *A.*2d 783 (emphasis added). "[B]y the time of a summary judgment motion, it is the plaintiff's obligation to be able to make such a demonstration or risk dismissal of the cause." *Id.* at 249, 872 *A.*2d 783.

■ Accordingly, even if the CFA were held to apply here, defendant at the summary judgment stage failed to establish an ascertainable loss. As noted, defendant never paid any money to the collection agency (or, for that matter, to plaintiff until his voluntary post-appeal settlement). Additionally, defendant failed to establish a causal relationship between the collection agency's conduct and any ascertainable loss he may have suffered. To the extent defendant's claimed damages are for his own counsel fees in defending against plaintiff's demand for payment, defendant's failure to demonstrate a bona fide claim of ascertainable loss sufficient to survive summary judgment precludes a counsel fee award. *Weinberg, supra,* 173 *N.J.* at 253, 801 *A.*2d 281.[4]

### D

Defendant procedurally argues that the motion judge erred in deciding the summary judgment motions without oral argument. However, none of the parties requested oral argument in their respective motions, and the record fails to reflect that oral argument was otherwise requested of, or denied by, the motion judge.

■ Defendant further faults the motion judge for granting summary judgment against him when discovery remained incomplete. Although discovery frequently should be completed before the court entertains summary judgment, *see Bilotti v. Accurate Forming Corp.,* 39 *N.J.* 184, 206, 188 *A.*2d 24 (1963), that general practice need not be observed in cases where it is readily apparent that continued discovery would not produce any additional facts necessary to a proper disposition of the motion. *See R.* 4:46–5 (authorizing courts to deny or continue summary judgment motions to accommodate further discovery of facts that would be "essential" to oppose the motion).

---

[4] As plaintiff is no longer involved in this appeal, we need not separately analyze the merits of the trial judge's finding that the transcript order form clearly authorized plaintiff to demand COD payment from defendant despite his status as an in-state attorney.

Here, defendant has not identified any additional discovery essential to the resolution of his claims against the collection agency. Moreover, we have considered the facts asserted by defendant in the light most favorable to him, and find that as a matter of law they fail to establish his claims against the collection agency and Morgan for common law fraud, or for violation of the CFA or the FDCPA.

Affirmed.