**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2761-17T3

DENISE SPATOLA,

     Plaintiff-Appellant,

v.

SEABROOK BROTHERS
& SONS, INC.,

     Defendant-Respondent,

and

SEABROOK FARMS, JAVIER
GONZALES, MATERIAL
HANDLING SUPPLY, INC., MHS
LIFT, INC., CROWN EQUIPMENT
CORPORATION, CROWN, and
CATERPILLAR, INC.,

     Defendants.

_____

Argued March 20, 2019 – Decided May 7, 2019

Before Judges Koblitz, Currier, and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0418-15.

Michael R. Contarino argued the cause for appellant.

Kathleen A. O'Malley argued the cause for respondent (Duane Morris LLP, attorneys; Kathleen A. O'Malley, of counsel and on the brief; Sarah M. Bachner, on the brief).

PER CURIAM

Plaintiff Denise Spatola appeals from the January 18, 2018 order granting summary judgment to her employer, defendant Seabrook Brothers & Sons, Inc. Because plaintiff's accident occurred in her workplace, and she has not met the stringent proofs to establish an intentional wrong, her exclusive remedy is under the Workers' Compensation Act (the Act), N.J.S.A. 34:15-1 to -146. We affirm.

Defendant is a company that processes fresh and frozen vegetables. Plaintiff worked in Repack, which was the area where frozen vegetables are sorted and packed pursuant to customer specifications. Forklifts brought large bins of frozen vegetables from the warehouse into Repack throughout the day. Data clerks were tasked with crossing the forklift lane in order to affix labels on finished bins of frozen vegetables. After processing the frozen vegetables, forklifts transported the finished products back to the warehouse.

At the time of these events, plaintiff was working as a data clerk.[1]  She stated she was waiting for the forklifts to clear the area before walking the twelve feet to the vegetable station.  When she saw a forklift out of the corner of her eye, she put her hands up and screamed "stop."  The operator did not see her and the forklift ran over her foot, causing her severe injuries.  The forklift operator tested negative for drugs and alcohol.

Three weeks later, in response to an anonymous complaint, the Occupational Health and Safety Administration (OSHA) made an unannounced visit to defendant's work site.  OSHA did not find any violations, and concluded in its report that defendant "met its legal obligation to protect [its] employees."

Repack is described as a "small place" and "very congested" as there are approximately fifty employees working in the area, seven forklifts moving in and out, and many bins of frozen vegetables.  As a result, there have been numerous reported and unreported forklift accidents in Repack and the surrounding warehouses.[2]  Although nineteen documented forklift accidents had

---

[1]  Plaintiff had also worked on the "mix crew," which required her to remain at her workstation and not cross the forklift lane.

[2]   A Repack shift supervisor testified there were "a lot of incidents w[h]ere people got bumped [by forklifts] and were never reported."

A-2761-17T3

occurred at defendant's facility in the forty months prior to plaintiff's incident, only eight of them were in Repack. Plaintiff's accident, however, was the "most serious."

Plaintiff filed suit,[3] alleging defendant's intentional conduct in not training its forklift drivers adequately caused her injury.[4] After extensive discovery, defendant moved for summary judgment. In a January 18, 2018 oral decision, the trial judge found plaintiff was unable to meet the "high threshold" that defendant's conduct was an intentional act sufficient to vault the Act's bar. The judge noted it was "pretty hard for [him] to find that [defendant] did an intentional act in causing [plaintiff's] injury when OSHA didn't find any violations whatsoever." The judge also determined defendant had no intent to deceive plaintiff or OSHA. He further explained, "plaintiff failed to prove the intentional wrong because [she] could not show an affirmative act by the employer beyond the employer having knowledge of the risk posed to the plaintiff and other employees." Finally, the judge determined this accident was "clearly part of industrial life" and of the type the legislature intended to be

---

[3] Plaintiff also instituted a workers' compensation action under which she has received benefits.

[4] The remaining defendants were dismissed by stipulation.

A-2761-17T3

covered under the exclusive remedy of the Act. Summary judgment was granted to defendant.

On appeal, plaintiff alleges: 1) the trial judge did not make reasonable inferences in her favor; and 2) she established both the conduct and context prongs of the intentional wrong exception.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Summary judgment should be granted only if the record demonstrates there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 539-40 (1995). In determining whether a summary judgment motion was properly granted, we review the evidence, drawing "all legitimate inferences from the facts in favor of the non-moving party." Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016) (citing R. 4:46-2(c)).

If no genuine issue of material fact exists, the inquiry then turns to "whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs. Inc., 396 N.J. Super. 486, 494

5

(App. Div. 2007)). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

Here, plaintiff argues the judge "repeatedly failed to view the evidence in a light most favorable to plaintiff and instead viewed the evidence against plaintiff." We discern no merit to this contention. Our review of the record reflects the trial judge considered each argument plaintiff presented and made a "discriminating search" of the evidence. Brill, 142 N.J. at 530 (quoting Ledley v. William Penn Life Ins. Co., 138 N.J. 627, 641 (1995)).

We are unpersuaded that plaintiff established her heavy burden to demonstrate the commission of an intentional wrong sufficient to vault the Act's bar to a negligence suit against her employer. The Supreme Court described the Act "as an historic 'trade-off.'" Laidlow v. Hariton Mach. Co., 170 N.J. 602, 605 (2002) (quoting Millison v. E.I. DuPont de Nemours & Co., 101 N.J. 161, 174 (1985)). By implied agreement, employees give up their right to pursue common-law remedies for work-related injuries and illnesses, in return for an automatic entitlement to a limited recovery. Ibid.; see generally N.J.S.A. 34:15-1 to -146. Similarly, the employer accepts strict liability for workplace injuries,

in return for limited and definite financial exposure. This system is accomplished through the Act's exclusive remedy provision:

> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.
>
> [N.J.S.A. 34:15-8.]

The standard for proving the "intentional wrong" exception is "formidable." Van Dunk v. Reckson Assocs. Realty Corp., 210 N.J. 449, 451 (2012). It is "interpreted very narrowly in order to further [the] underlying quid pro quo goals [of the Act], so that as many work-related disability claims as possible [can] be processed exclusively within the workers' compensation system." Mabee v. Borden, Inc., 316 N.J. Super. 218, 226-27 (App. Div. 1998) (citing Millison, 101 N.J. at 177). If the exception is "interpreted too broadly," it could "swallow up the entire 'exclusivity' provision of the [Act]," because "virtually all employee accidents, injuries, and sicknesses are a result of the employer or a co-employee intentionally acting to do whatever it is that may or may not lead to eventual injury or disease." Millison, 101 N.J. at 177.

Our Supreme Court has established a two-prong test to prove an employer committed an intentional wrong. The plaintiff bears the burden of establishing both the "conduct" and "context" prongs. Id. at 179.

To satisfy the conduct prong, a plaintiff must show her employer acted with "substantial certainty" that injury or death would result. Van Dunk, 210 N.J. at 451; Mull v. Zeta Consumer Prods., 176 N.J. 385, 391 (2003). "[M]ere knowledge and appreciation of a risk" is insufficient. Millison, 101 N.J. at 179. Rather, trial courts must determine whether the employer's conduct evidenced a virtual certainty of death or injury. Id. at 178.

A plaintiff must also establish the context prong, demonstrating the resulting injury is "more than a fact of life of industrial employment" and "plainly beyond anything the Legislature [would have] intended [the Act] to immunize." Van Dunk, 210 N.J. at 462 (quoting Laidlow, 170 N.J. at 617); Mull, 176 N.J. at 391. "[T]he context prong acts as an additional check against overcoming the statutory bar to a common-law tort action" in order to "reinforce the strong legislative preference for the workers' compensation remedy." Van Dunk, 210 N.J. at 473.

An intentional wrong requires more than a violation of safety regulations or failure to follow good safety practices. The alleged wrongful act must be

accompanied by something more, typically deception, affirmative acts that defeat safety devices, or a willful failure to remedy past violations. See id. at 470 (holding a "finding of a willful violation under OSHA is not dispositive of the issue of whether the employer . . . committed an intentional wrong"); Laidlow, 170 N.J. at 616 (noting the "mere toleration of workplace hazards 'will come up short' of substantial certainty") (quoting Millison, 101 N.J. at 179). Absent such egregious conduct, the employee is limited to remedies under the Act.

Plaintiff contends she has satisfied the conduct prong through her proofs regarding the congestion in Repack, the insufficient forklift training, and the multiple forklift accidents. These allegations, however, are insufficient to establish the conduct prong. Defendant's business is freezing and packing frozen vegetables for resale. The operations require forklifts to move its product from the warehouse to other areas. Plaintiff was aware of the congested Repack area and the continuous forklift traffic. In addition to being trained on forklift safety during her employment with defendant, plaintiff was a certified forklift driver herself, and had operated forklifts for several years at prior jobs.

Plaintiff has not demonstrated an affirmative act that made the workplace significantly less safe for its employees. Defendant did not intentionally conceal

A-2761-17T3

information from its employees or remove a safety device from a piece of machinery — acts our courts have deemed "intentional wrongs." See Millison, 101 N.J. at 182; Crippen v. Central Jersey Concrete Pipe Co., 176 N.J. 397, 410-11 (2003).

Plaintiff further contends defendant intentionally deceived OSHA prior to her accident and during their unannounced visit after her injury. The year before plaintiff's accident, defendant received a citation from OSHA for not evaluating the forklift drivers every three years and failing to re-train the drivers after an accident. In its report, the OSHA investigator noted that defendant was forthcoming with its investigation and showed a willingness "to make [the] corrections by the date(s) specified." Defendant did implement the required changes.

Plaintiff alleges that when OSHA visited the site after her accident, defendant's representatives told OSHA there had only been one or two prior forklift accidents. However, the OSHA report contradicts plaintiff's assertions. It states that the investigator reviewed defendant's "injury and illness history" and determined "[t]here had been several employee injuries involving fork trucks in recent years." The report further indicated that defendant's management was cooperative during the investigation. Plaintiff's contentions

A-2761-17T3

that defendant was deceitful to OSHA about any dangers in its workplace are unsupported by the record.

Even viewing the facts in the light most favorable to plaintiff, we cannot find that defendant knowingly exposed her to a virtual certainty of harm. Therefore, she has not established the high threshold of the conduct prong required to sustain an intentional wrong to avoid the workers' compensation bar.

Because plaintiff has not established the conduct prong, we need not address the context prong. See Van Dunk, 210 N.J. at 473. We note again that our courts have consistently implemented a "high threshold for the contextual analysis," id. at 474, requiring intentional or deceptive conduct that "violates the social contract so thoroughly" that the Legislature could not have intended to insulate such despicable behavior. See Laidlow, 170 N.J. at 622; see also Millison, 101 N.J. at 182; Mull, 176 N.J. at 392-93; Crippen 176 N.J.at 411. Plaintiff cannot meet that standard. As the Supreme Court has stated, a forklift accident is simply "a fact of life of industrial employment," which was clearly contemplated to fall within the purview of the Act. Van Dunk, 210 N.J. at 461.

Plaintiff has not established defendant committed an intentional wrong, and, therefore, she is limited to the remedies available under the Act.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2761-17T3