**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1954-20

MCDONALD MOTORS
CORPORATION,

      Plaintiff-Appellant,

v.

JOHN J. DELANEY, ESQ., and
LINDABURY, MCCORMICK,
ESTABROOK & COOPER, P.C.,

      Defendants-Respondents.

_____

Argued March 16, 2022 – Decided March 28, 2022

Before Judges Sumners and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1119-20.

Robert W. McAndrew argued the cause for appellant (McAndrew Vuotto, LLC, attorneys; Robert W. McAndrew, of counsel and on the briefs; Michael R. McAndrew, on the briefs).

Paul A. Carbon argued the cause for respondents (Margolis Edelstein, attorneys; Paul A. Carbon, of counsel and on the brief; Patrick F. Kelly, on the brief).

PER CURIAM

In this legal malpractice action, plaintiff McDonald Motor Corporation appeals from two Law Division orders entered on November 24, 2020, and February 19, 2021, dismissing its first and second amended complaints for failure to state a claim for which relief can be granted under Rule 4:6-2(e). Defendants John J. Delaney, Esq. and his employer, Lindabury, McCormick, Estabrook & Cooper, P.C. (the law firm) (collectively defendants), represented HisVision, LLC (HV) before the Morristown Planning Board (Board) on multiple variance applications. Plaintiff's property is adjacent to HV's property. Plaintiff contends there were multiple errors that precluded its claims from being litigated and tried on the merits. For the reasons stated below, we affirm the orders under review.

I.

We summarize the following facts from the record and the allegations in plaintiff's first and second amended complaints, treating those allegations as true and extending all favorable inferences to plaintiff. See Craig v. Suburban Cablevision, Inc., 140 N.J. 623, 625-26 (1995). In 2017, HV filed an application with the Board to construct a restaurant at 51 Bank Street in Morristown. Plaintiff is the owner of 55 Bank Street and throughout the ten hearings

A-1954-20

conducted over diverse dates between May 25, 2017, and June 28, 2018, it objected to HV's application.

Before the May 24, 2018 hearing, the ninth hearing, Delaney contacted the Board attorney, John Inglesino, Esq., to notify him about a potential conflict of interest involving Joseph Kane, a Board member. In 2014, the law firm "had done some estate planning work" for Kane and drafted him a will and general durable power of attorney. According to Delaney, "he did not draft any of Kane's estate documents; rather, [his] former law partner, who is no longer associated with [the law firm], allegedly drafted these documents."

At the May 24, 2018 hearing, Inglesino shared this information with the Board and recommended the members analyze whether a conflict exists under Wyzykowski[1] before deciding the application. "The Board decided that it should

---

[1]  Our Court has identified four types of conflicts that could compel public officials to depart from their civic duties:

> (1) "Direct pecuniary interests," when an official votes on a matter benefitting the official's own property or affording a direct financial gain; (2) "Indirect pecuniary interests," when an official votes on a matter that financially benefits one closely tied to the official, such as an employer, or family member; (3) "Direct personal interest," when an official votes on a matter that benefits a blood relative or close friend in a non-financial way, but a matter of great importance, as in

consider whether there was a conflict if Kane presided over the [a]pplication and, if so, what effect that might have on the proceedings."  The Board carried the application to its June 28, 2018 meeting where it considered witness testimony from HV and plaintiff and "favorable comments from the public in favor of the [a]pplication."  Kane subsequently failed to recuse himself.  In its August 23, 2018 resolution, the Board approved HV's application.

On October 8, 2018, plaintiff filed an action in lieu of prerogative writs in the Law Division.  In part, plaintiff "sought reversal of the Board's resolution and the taxed costs incurred by ordering the Board hearing transcripts."  A prior judge held a case management conference on February 20, 2019.  "Rather than engage in discovery, the parties agreed to a [p]retrial [s]tipulation of [f]acts, which was filed on June 14, 2019, to clarify the nature of Kane's relationship

the case of a councilman's mother being in the nursing home subject to the zoning issue; and (4) "Indirect Personal Interest," when an official votes on a matter in which an individual's judgment may be affected because of membership in some organization and a desire to help that organization further its policies.

[Wyzykowski v. Rivas, 132 N.J. 509, 525-26 (1993) (citing Michael A. Pane, Conflict of Interest: Sometimes a Confusing Maze, Part II, New Jersey Municipalities, Mar. 1980, at 8, 9).]

A-1954-20

with Delaney." Based on the stipulation of facts, the judge found Delaney and Kane's relationship was as follows:

> Delaney was designated the alternate executor under Kane's 2003 will, and that he witnessed this will. In 2006, Delaney was not the primary executor of the 2003 will, nor was he a beneficiary under this will. Delaney opened a file for Kane to obtain a police report for him, but Delaney undertook no further legal actions on Kane's behalf. Delaney has not personally provided any legal work for Kane since 2006. In 2014, when Kane decided to update his estate planning documents, he retained [the law] firm—in particular, John Chester, Esq.—to revise his will and power of attorney. Delaney was designated as the executor and successor trustee under the 2014 will, and as the successor attorney-in-fact under the 2014 power of attorney. Delaney also notarized Kane's 2014 estate documents, and his wife and son witnessed them. Chester left the [law] firm in December 2017. Kane and Delaney are on friendly terms and they occasionally see each other at local events. They do not actively maintain a social relationship, nor do they engage in any business ventures together.
>
> [(Citations omitted).]

On October 25, 2019, the judge issued an order and statement of reasons finding an indirect conflict existed between Kane and Delaney that should have disqualified Kane from voting. Accordingly, the judge remanded HV's application to the Board for reconsideration "with a replacement for Kane, if his absence would prevent a quorum."

On May 26, 2020, plaintiff filed its initial complaint and jury demand against defendants seeking compensatory damages for opposing and participating "in a sham proceeding," not cognizable in an action in lieu of prerogative writs. Plaintiff then filed its first amended complaint on October 7, 2020, alleging three causes of action against defendants: (i) professional negligence; (ii) breach of fiduciary duty; and (iii) vicarious liability. In lieu of filing an answer, defendants filed a motion to dismiss plaintiff's first amended complaint for failure to state a claim upon which relief can be granted under Rule 4:6-2(e).[2]

On November 24, 2020, the motion judge conducted oral argument on defendants' motion. Viewing the facts alleged in a light most favorable to plaintiff, the judge granted defendants' motion and dismissed plaintiff's first amended complaint without prejudice. However, the judge "permitted

---

[2] Rule 4:6-2 provides:

> Every defense, legal or equitable, in law or fact, to a claim for relief in any complaint, counterclaim, cross-claim, or third-party complaint shall be asserted in the answer thereto, except that the following defenses . . . may at the option of the pleader be made by motion, with briefs: . . . (e) failure to state a claim upon which relief can be granted.

A-1954-20

[p]laintiff to file an amended complaint within fourteen . . . days setting forth sufficient facts to establish a cause of action."

On December 7, 2020, plaintiff filed its second amended complaint, reiterating its three causes of action pled in its first amended complaint and adding a fourth cause of action "for intentional misrepresentation/equitable fraud." Defendants filed a second motion to dismiss under Rule 4:6-2(e).

In a comprehensive statement of reasons, the judge highlighted plaintiff's second amended complaint presents claims that are "substantially the same as [those] in the [f]irst [a]mended [c]omplaint, with the exception of the additional count for intentional misrepresentation [and] equitable fraud." The judge explained the elements of legal fraud are: "(1) material misrepresentation of a presently existing or post fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages," citing Banco Popular N. Am. v. Gandhi, 184 N.J. 161, 172-73 (2005) (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1977)).

7

The judge further explained that "[f]raud claims are subject to heightened pleading standards," citing Rule 4:5-8.[3] In reviewing the second amended complaint, the judge found plaintiff acknowledged "during the [p]lanning [b]oard process, Delaney brought up the fact that he had a long-standing personal relationship with Kane and his [f]irm had previously provided estate planning services for Board member [Kane]." Finding no intentional misrepresentation by defendants, on February 19, 2021, the judge granted their motion to dismiss the second amended complaint, this time with prejudice, and entered a memorializing order. This appeal ensued.

On appeal, plaintiff argues the judge: (1) erred in dismissing the second amended complaint for failure to state a cause of action; (2) the facts were alleged with specificity to support a cause of action for intentional misrepresentation, breach of fiduciary duty, and vicarious liability; (3) the entire controversy is not a bar to its prosecuting the second amended complaint; and (4) reversal is warranted to prevent absolving attorneys from disclosing disqualifying conflicts and to mandate their candor to tribunals.

---

[3] Rule 4:5-8 (a) provides: "Fraud; Mistake; Condition of Mind. In all allegations of misrepresentation, fraud, mistake, breach of trust, willful deceit or undue influence, particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally." (Emphasis added.)

## II.

"An appellate court reviews de novo the trial court's determination of the motion to dismiss [for failure to state a claim upon which relief can be granted] under Rule 4:6-2(e)." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019). "It owes no deference to the trial court's legal conclusions." Ibid. In considering a Rule 4:6-2(e) motion, this court "examines 'the legal sufficiency of the facts alleged on the face of the complaint,' Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989), limiting its review to 'the pleadings themselves,' Roa v. Roa, 200 N.J. 555, 562 (2010)." Dimitrakopoulos, 237 N.J. at 107 (2019).

The test for determining the adequacy of a pleading is "whether a cause of action is 'suggested' by the facts." Teamsters Lo. 97 v. Slate, 434 N.J. Super. 393, 412 (App. Div. 2014) (quoting Printing Mart-Morristown, 116 N.J. at 746). "In evaluating motions to dismiss, courts [may] consider allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Banco Popular N. Am., 184 N.J. at 183 (internal quotation marks omitted) (quoting Lum v. Bank of Am, 361 F.3d 217, 222 n.3 (3d Cir. 2004)). Furthermore, "the plaintiff must receive every reasonable inference." Ibid. "[I]t is the existence of the fundament of a cause

A-1954-20

of action . . . that is pivotal[.]" Teamsters Local 97, 434 N.J. Super. at 412-13 (second alteration in original) (quoting Banco Popular N. Am., 184 N.J. at 183.)

Finding the fundament of a cause of action in those documents is pivotal; a plaintiff's ability to prove its allegations is not at issue. Printing Mart-Morristown, 116 N.J. at 772. "Nonetheless, if the complaint states no claim that supports relief, and discovery will not give rise to such a claim, the action should be dismissed." Dimitrakopoulos, 237 N.J. at 107-08. "If the court considers evidence beyond the pleadings in a Rule 4:6-2(e) motion, that motion becomes a motion for summary judgment, and the court applies the standard of Rule 4:46." Id. at 107.

In order for plaintiff's complaint to survive a motion under Rule 4:6-2(e), it must have pled sufficient allegations to establish a claim for legal malpractice. A claim for "[l]egal malpractice is a variation on the tort of negligence" relating to an attorney's representation of a client. Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C., 179 N.J. 343, 357 (2004) (citing McGrogan v. Till, 167 N.J. 414, 425 (2001)).

Plaintiff claims the judge "improvidently relied upon assumptions about what the evidence might show" when dismissing its complaints. It alleges that defendants' failure to disclose the nature of their relationship with Kane at the

10

onset of proceedings has tainted his right to a fair hearing. We address the four causes of action pled in plaintiff's second amended complaint in turn:

A.   Professional Negligence

Legal malpractice claims are "grounded in the tort of negligence." Gilbert v. Stewart, 247 N.J. 421, 442 (2021) (quoting Nieves v. Off. of the Pub. Def., 241 N.J. 567, 579 (2020)). "Accordingly, the elements of a legal malpractice claim are: '(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff.'" Id. at 442-43 (quoting Nieves, 241 N.J. at 582). "The client bears the burden of proving by a preponderance of [the] credible evidence that injuries [or damages] were suffered as a proximate consequence of the attorney's breach of duty." Sommers v. McKinney, 287 N.J. Super. 1, 10 (App. Div. 1996) (citing Lieberman v. Emps. Ins. of Wausau, 84 N.J. 325, 342 (1980)). As the judge noted in his February 19, 2021 order, "[p]laintiff fails to allege the existence of an attorney-client relationship with Delaney, which omission is fatal to [its] claim of professional liability."

"The determination of the existence of a duty is a question of law for the court." Singer v. Beach Trading Co., 379 N.J. Super 63, 74 (App. Div. 2005)

(quoting Petrillo v. Bachenberg, 139 N.J. 472, 479 (1995)). Because of our Court's "ordinary reluctance to permit non-clients to sue attorneys remains unchanged," Green v. Morgan Props., 215 N.J. 431, 460 (2013), finding an attorney owed a duty to a non-client "has been applied rather sparingly," only in "carefully circumscribed" holdings, LoBiondo v. Schwartz, 199 N.J. 62, 102, 116 (2009). The Court has held "the grounds on which any plaintiff may pursue a malpractice claim against an attorney with whom there was no attorney-client relationship [remain] exceedingly narrow." Green, 215 N.J. at 458.

"Whether an attorney owes a duty to a non-client third party depends on balancing the attorney's duty to represent clients vigorously, with the duty not to provide misleading information on which third parties foreseeably will rely." Petrillo, 139 N.J. at 479 (citations omitted); accord Davin, L.L.C. v. Daham, 329 N.J. Super. 54, 76 (App. Div. 2000) ("When considering the imposition of a duty upon an attorney, [this court] must therefore consider the impact that duty will have upon the public, in general, and the attorney's client's right to vigorous and effective representation.").

"In determining whether a duty exists, the court must identify, weigh and balance the following factors: the relationship of the parties; the nature of the attendant risk; the opportunity and ability to exercise care; and the public

interest in the proposed solution." <u>Davin</u>, 329 N.J. Super. at 73.  The ultimate question is one of fairness.  <u>Innes v. Marzano-Lesnevich</u>, 435 N.J. Super. 198, 213 (App. Div. 2014) (holding "privity between an attorney and a non-client is not necessary for a duty to attach where the attorney had reason to foresee the specific harm which occurred.").

Indeed, we have recognized "[p]rivity between an attorney and a non-client is not necessary for a duty to attach 'where the attorney had reason to foresee the specific harm which occurred.'"  <u>Ibid.</u>  (quoting <u>Est. of Albanese v. Lolio</u>, 393 N.J. Super. 355, 368-69 (App. Div. 2007)) (alternation in original).  In limited circumstances, a duty to a non-client has been found when the attorney knew, or should have known, that the non-client would rely on the attorney's representation and the non-client is not too remote from the attorney to be entitled to protection.  <u>Ibid.</u>; <u>accord</u> <u>Banco Popular N. Am.</u>, 184 N.J. at 181 ("[T]he invitation to rely and reliance are the linchpins of attorney liability to third parties.").  For example, we have imposed third-party liability on an attorney for negligent acts or omissions when third-party reliance on such acts was foreseeable.  <u>See, e.g.</u>, <u>Atl. Paradise Assocs. v. Perskie, Nehmad & Zeltner</u>, 284 N.J. Super. 678, 685-86 (App. Div. 1995) (finding cause of action by

plaintiff-purchasers against defendant law firm where plaintiffs relied on misrepresentations in public offering statement).

Furthermore, "a lawyer's duty may run to third parties who foreseeably rely on the lawyer's opinion or other legal services." Petrillo, 139 N.J. at 485. Here, plaintiff relies on the facts in Petrillo to support its claim that Delaney violated his duty of candor to plaintiff—an admitted non-client—by failing to disclose his relationship with Kane. In Petrillo, the Court found as a matter of law that the attorney for a seller of real estate owed a duty to a non-client-potential buyer after providing him incomplete environmental reports. 139 N.J. at 474, 488-89. As part of the sales packet, the attorney produced only two pages from two separate environmental reports, which described a single series of two successful percolation tests out of seven when read together. Id. at 475. But taken together, the two reports showed that three out of thirty tests were successful. Id. at 474-75.

The Court held that the attorney had a duty not to negligently misrepresent the contents of a material document of which he knew, or should have known, a potential buyer might rely on to his or her detriment. Id. at 489. And, the Court found it was foreseeable that a potential buyer would rely on the environmental documents provided by a seller's attorney when deciding to purchase real

14

property and the attorney's relationship, through the seller-client, was not too remote to render the harm to a non-client-buyer unforeseeable. Id. at 488-89; see also Davin, 329 N.J. Super. at 76-78 (imposing a duty on an attorney to a non-client during a lease negotiation for the attorney's failure to disclose facts that went "to the very essence of the transaction" such as the property being in foreclosure and inserting covenant of quiet enjoyment in the lease).

We conclude from our de novo review the judge correctly dismissed plaintiff's second amended complaint with prejudice because contrary to its arguments, plaintiff could not establish the required elements of an attorney-client relationship or that it personally suffered any damages as a consequence of defendants' actions vis-à-vis the planning board. The record clearly shows Delaney disclosed his relationship with Kane to Inglesino and the planning board upon learning of the conflict. Therefore, Delaney did not invite plaintiff to rely on a misrepresentation of material fact. Moreover, the Board was duly instructed by its attorney to conduct an analysis under Wyzykowski. Hence, Delaney did not owe a non-client duty to plaintiff, a voluntary objector, not an intended victim.

B.    Intentional Misrepresentation/Fraud

To succeed "on a common law fraud claim, plaintiff must show that defendant: (1) made a representation or omission of a material fact; (2) with knowledge of its falsity; (3) intending that the representation or omission be relied upon; (4) which resulted in reasonable reliance; and that (5) plaintiff suffered damages." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 336 (App. Div. 2013). "Equitable fraud is similar to legal fraud," but "the plaintiff need not establish the defendant's scienter." Ibid. A "defendant's scienter" is the "defendant's knowledge of the falsity and intent to obtain an undue advantage." Ibid. "[P]laintiff must prove each element by 'clear and convincing evidence.'" Ibid. (quoting Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 395 (App. Div. 1989)).

Plaintiff's second amended complaint asserts "[a]t the May 24, 2018 Board meeting, the ninth meeting and after eight days of hearings, Delaney first brought up the fact that he had a long-standing personal relationship with Kane and that [the law firm] had previously provided estate planning services for Board member [Kane]." We note plaintiff does not specify what Delaney concealed or omitted. Plaintiff's general allegation is insufficient to state a claim for common law fraud.

16

As the judge pointed out, "While perhaps [d]efendants did not make the disclosure prior to the commencement of proceedings or provide the exact level of detail deemed adequate by [p]laintiff, [d]efendants' disclosure was made in time for Kane to recuse himself prior to [his] deliberation regarding HV's application." We are unpersuaded by plaintiff's assertion that it pled "the exact date and time of [d]efendants' misdeed." Plaintiff's second amended complaint is bereft of any particulars that adequately allege intentional misrepresentation or fraud.

C.     Breach of Fiduciary Duty

Plaintiff argues that defendants "owed to the participants, including the parties and the public at large," a fiduciary duty to immediately disclose the relationship with Kane at the outset of the proceedings which would have forced Kane to recuse himself. Our Court has explained:

> The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position. A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship.
>
> [F.G. v. MacDonell, 150 N.J. 550, 563 (1997).]

Where the parties' relationship is "essentially adversarial," the "general presumption" is the one of an arms-length transaction on equal footing. See, e.g., United Jersey Bank v. Kensey, 306 N.J. Super. 540, 553 (App. Div. 1997).

In its brief, plaintiff relies on the proposition in Albright v. Burns, 206 N.J. Super. 625, 632-33 (App. Div. 1986), that "a member of the bar owes a fiduciary duty to persons, though not strictly clients, who he knows or should know rely on him in his professional capacity." In Albright, the attorney assisted a client in removing assets from his estate before he passed away and later represented the estate. Id. at 632. We held the attorney owed a duty to the non-client beneficiaries of the will because they relied on the attorney's advice as a professional representing the estate after the decedent passed, as well as his understanding of the assets and their location. Id. at 633-34.

Here, in contrast, plaintiff and defendants were arms-length adversaries in the Board proceedings. See United Jersey Bank, 306 N.J. Super. at 553. "In fact, [p]laintiff was represented by its own counsel in opposing HV's application presented by [d]efendants." Moreover, plaintiff did not rely on defendants for advice nor did a relationship arise where Delaney was "under a duty to act for or give advice for the benefit of [plaintiff] on matters within the scope of" the

application.  F.G., 150 N.J. at 563.  Instead, plaintiff had its own counsel, who owed it a fiduciary duty.  Ibid.

Plaintiff's argument that defendants owed the public a fiduciary duty also lacks merit because it extends the fiduciary duty beyond a confidential relationship.  Accepting this proposition would undermine the trust and intimacy that distinguishes a fiduciary relationship from other transactional relationships.  See id. at 563-64.  Therefore, the judge correctly dismissed plaintiff's breach of fiduciary claim under Rule 4:6-2(e).

D.    Vicarious Liability

In its brief, plaintiff fails to include any argument or case law relative to the vicarious liability issue.  "An issue not briefed on appeal is deemed waived." Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011).  However, we add the following remarks.

A decision "which exonerates the employee from liability requires also the exoneration of the employer."  Walker v. Choudhary, 425 N.J. Super. 135, 152 (App. Div. 2012) (quoting Kelley v. Curtiss, 16 N.J. 265, 270 (1954)).  "[I]f the employee is not to be held responsible for his wrongdoing, the employer whose liability is asserted solely upon the basis of imputed responsibility for his employee's wrong cannot in fairness and justice be required to respond in

19

damages for it." Ibid. (quoting Kelley, 16 N.J. at 271). Delaney is an employee of the law firm. Accordingly, plaintiff's cause of action for vicarious liability against the law firm cannot stand because its underlying liability claims are unsustainable. Therefore, the judge properly dismissed the vicarious liability claim as a matter of law.

## III.

We now address plaintiff's argument that the entire controversy is not a bar to the prosecution of its second amended complaint. Under the entire controversy doctrine, "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required." R. 4:30A. When considering application of the doctrine, the court must "guided by the general principle that all claims arising from a particular transaction or occurrence should be joined in a single action." Higgins v. Thurber, 413 N.J. Super. 1, 12 (App. Div. 2010). This "mandate encompasses not only matters actually litigated but also other aspects of a controversy that might have been litigated and thereby decided in an earlier action." Ibid.

Furthermore, "if the entire controversy doctrine is to have true meaning as a principle of law in this jurisdiction, it must prevent attempts to litigate issues overlooked by parties in their prior related cases." Fort Lee Borough v. Dir.,

Div. of Tax'n, 14 N.J. Tax 126, 139 (1994). Nevertheless, "the doctrine does not apply to bar component claims that are unknown, unarisen, or unaccrued at the time of the original action." Higgins, 413 N.J. Super. at 12; Pressler & Verniero, Current N.J. Court Rules, cmt. 3.3 on R. 4:30A (2022). For the entire controversy doctrine to apply, a factual nexus must exist. See Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015). Designed to promote judicial efficiency, fairness to the parties, and complete and final dispositions, the doctrine avoids piecemeal litigation. DiTrolio v. Antiles, 142 N.J. 253, 267 (1995). When determining whether to apply the doctrine, the principal determination is if the party asserting a claim "had a fair and reasonable opportunity to litigate that claim." Hobart Bros. Co. v. Nat'l Union Fire Ins. Co., 354 N.J. Super. 229, 241 (App. Div. 2002).

Here, plaintiff asserts the judge erred in barring its claims under the entire controversy doctrine because "[t]he parties are not the same, the legal question is not the same, the damages sought are not the same, the forum is not designed to address monetary damages, and although the facts might be similar, the facts are not the same." Rather, "[p]laintiff seeks redress for the intentional or negligent misrepresentation made by Delaney that in fact necessitated the prerogative writs action to be filed," whereas the action in lieu of prerogative

21

writs itself sought to reverse the municipal action against the Board. Again, we disagree.

There is no bright-line rule that prevents interrelated claims from being adjudicated in connection with an action in lieu of prerogative writs action. Joel v. Morrocco, 147 N.J. 546, 548 (1997). "The entire controversy doctrine seeks to further" the objectives mentioned above "by requiring that, whenever possible, 'the adjudication of a legal controversy should occur in one litigation in [only] one court.'" Ibid. (quoting Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 15 (1989)). The judge here noted "[t]he Joel Court found critically important whether the facts adduced in the first action," which was a prerogative writs action in Joel also, "would be adduced in the second action and whether the claims in the second action were necessary to the determination of the first action." Joel, 147 N.J. at 39.

Despite plaintiff's attempts to differentiate the action in lieu of prerogative writs from the matter under review, there is a transactional nexus. The nexus includes the same parties, the same set of facts, the same record, and the same underlying issue—whether defendants' disclosure sufficed to establish a conflict of interest with Kane that warranted his recusal or Delaney's. As the judge highlighted in his February 19, 2021 order:

> Plaintiff requested attorneys' fees and costs incurred in connection with the . . . Board hearing and having to bring the [a]ction following Kane's failure to recuse himself following the alleged inadequate disclosure by HV's counsel of a conflict. Unlike <u>Joel</u>, in this action, [p]laintiff seeks the same exact relief based upon the same facts, except now [p]laintiff seeks damages from HV's counsel instead of HV.

The judge's decision was based upon substantial credible evidence in the record and plaintiff's complaints were properly dismissed with prejudice under the entire controversy doctrine.

## IV.

Plaintiff also claims defendants violated Rules of Professional Conduct (RPC) 3.3(a)(1)(5), thus warranting a reversal. RPC 3.3(a)(1) and (5) state "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal" or "fail to correct a false statement of material fact or law previously made to the tribunal." Plaintiff argues Delaney had a disqualifying conflict and the judge permitted attorneys to run afoul of the RPC. We reject plaintiff's argument for the following reasons.

First, Delaney did not knowingly "make a false statement of material fact or law" to anyone, including "a tribunal"—the Board. RPC 3.3(a)(1). Second, he did not "fail to disclose to the tribunal a material fact knowing that the omission [was] reasonably certain to mislead the tribunal" because Delaney was

23

unaware of the conflict before disclosing same to the Board. RPC 3.3(a)(5).

Third, Delaney volunteered the information, which is the subject of the appeal.

Therefore, we discern no reversible error.

Any arguments made by plaintiff that we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1954-20