**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2568-21

JOHN M. MAVROUDIS,

     Plaintiff-Appellant,

v.

VEDDER PRICE P.C.,
MITCHELL D. COHEN, ESQ.,
MCELROY, DEUTSCH,
MULVANEY & CARPENTER,
LLP, and WILLIAM F.
O'CONNOR, JR., ESQ.,

     Defendants-Respondents,

and

THOMAS DINARDO, JOSEPH F.
BELASCO, JR., CULINARY
HOLDING, INC., CULINARY
VENTURES, INC., CULINARY
VENTURES, L.L.C., ADVANCED
BEVERAGE INC., SANSNAME,
INC., and DING MOO LLC,

     Defendants.

_____

Argued January 9, 2024 – Decided September 6, 2024

Before Judges Gooden Brown and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-7714-19.

Michael D. Camarinos argued the cause for appellant (Camarinos Law Group, LLC, attorneys; Michael D. Camarinos, on the briefs).

John L. Slimm argued the cause for respondents McElroy, Deutsch, Mulvaney & Carpenter, LLP and William F. O'Connor, Jr., Esq. (Marshall Dennehey, PC, attorneys; John L. Slimm, on the brief).

Brian J. Molloy argued the cause for respondents Vedder Price, PC and Mitchell D. Cohen, Esq. (Wilentz, Goldman & Spitzer, PA, attorneys; Brian J. Molloy and Daniel J. Kluska, of counsel and on the brief; Samantha Stillo, on the brief).

PER CURIAM

Plaintiff John M. Mavroudis appeals from: (1) a March 11, 2022, Law Division order granting summary judgment dismissal of his common law fraud claim against defendants Vedder Price, P.C., and Mitchell D. Cohen, Esq. (the VP defendants); (2) a March 11, 2022, Law Division order granting summary judgment dismissal of his common law fraud claim against defendants McElroy, Deutsch, Mulvaney & Carpenter, LLP, and William F. O'Connor, Jr., Esq. (the McElroy defendants); and (3) a June 18, 2020, Law Division order granting

defendants' respective motions to dismiss plaintiff's professional negligence-based claims against them pursuant to Rule 4:6-2(e). We affirm.

## I.

Plaintiff's claims are the culmination of over ten years of litigation in various courts, stemming from a judgment General Electric Capital Corporation (GE) obtained on January 30, 2012, against plaintiff, his son, Michael Mavroudis, and his business partners, Thomas DiNardo and Joseph Belasco, Jr. (collectively, the debtors). The judgment was obtained jointly and severally and totaled $2,503,552,[1] plus post-judgment interest and fees (the GE judgment). We later affirmed the judgment in an unpublished opinion. Gen. Elec. Cap. Corp. v. Imaging Ctr. of Oradell, LLC, Nos. A-3001-11, A-3955-11 (App. Div. June 12, 2013) (slip op. at 2).

The GE judgment arose from a pair of lease agreements that GE and Imaging Center of Oradell, LLC (ICO) entered into involving several pieces of medical imaging equipment. Id. at 2. The debtors all executed unconditional guarantees of payment in connection with the leases. Id. at 2-4. When ICO defaulted on the leases, GE retained the VP defendants and filed a complaint in the Law Division to enforce the agreements, ultimately resulting in the entry of

---

[1] We round all monetary amounts to the nearest dollar.

A-2568-21

the judgment (the Law Division action). Id. at 5-6. GE also filed a separate action against the debtors in the Chancery Division, asserting claims of fraudulent conveyance (the Chancery Division action). ICO subsequently filed for bankruptcy and its assets were liquidated, resulting in various credits that reduced the balance of the GE judgment to $1,477,882.

In its debt collection efforts, GE filed motions in the Chancery Division action seeking to compel DiNardo and Belasco to turn over and divest themselves of any stock or other ownership interests they had in several of their companies. GE also sought to satisfy the debt from the debtors' personal property and obtained a writ of execution specifically directing the Bergen County Sheriff to satisfy the GE judgment out of plaintiff's personal property. Mavroudis v. Tangible Secured Funding, Inc., Nos. A-1118-13, A-1941-13 (App. Div. June 14, 2016) (slip op. at 3).[2]

Pursuant to the writ, the Bergen County Sheriff took an inventory of plaintiff's personal property and scheduled an asset sale for April 24, 2013. Id. at 3. On March 22, 2013, plaintiff and his wife filed a complaint against GE and

_____

[2] The unpublished opinions cited in this opinion are not cited as precedent, but rather for the limited purpose of presenting relevant background information. See Animal Prot. League of N.J. v. N.J. Dep't of Env't Prot., 423 N.J. Super. 549, 556 n.2 (App. Div. 2011).

the Bergen County Sheriff to stop the sale, claiming that an oral agreement made between the couple before their marriage allocated the ownership of all personal property in their home to his wife (the asset litigation). Id. at 3, 5. On September 18, 2013, GE assigned the GE judgment to Tangible Secured Funding, Inc. (Tangible). Tangible was a separate creditor from whom the debtors had also borrowed funds. Tangible was substituted into the asset litigation on September 27, 2013. Id. at 2 n.1.

While the asset litigation was pending, and notwithstanding court orders prohibiting plaintiff and his wife from dissipating property contained in the Sheriff's inventory, plaintiff and his wife consigned a valuable oil painting listed on the inventory to Sotheby's in New York. Id. at 4-5. The net proceeds from the painting's sale amounted to $1.3 million after Sotheby's fees were deducted. The $1.3 million was deposited into the Trust Fund Unit of the Superior Court pending further court order. On November 19, 2013, after a unanimous jury found in the asset litigation that plaintiff had shared ownership with his wife of the personal property levied upon, a final judgment was entered in favor of Tangible. Id. at 2, 7. As a result, pursuant to a December 18, 2013, order, the proceeds of the painting's sale were applied to the balance of the GE judgment.

Id. at 2-3. The December 18 order also directed the Sheriff to execute a sale of plaintiff's remaining assets until the GE judgment was satisfied in full.

Prior to the asset litigation verdict, DiNardo and Belasco retained McElroy, Deutsch, Mulvaney & Carpenter (McElroy) to represent their interests in settlement negotiations for both the GE judgment as well as the separate debt they owed to Tangible. By way of background, in 2010, Tangible had issued two loans totaling $1.5 million to companies managed by plaintiff, DiNardo, and Belasco (the Tangible loan). The loans were secured by promissory notes and mortgages executed in favor of Tangible by the debtors, in both their individual capacities and on behalf of their companies. As with the GE leases, the debtors also executed unconditional personal guarantees for the entire debt amounts. The first of the two notes became due in October 2010, and the second became due in March 2011. However, the companies defaulted on both notes. By late 2013, plaintiff, DiNardo, and Belasco jointly and severally owed a combined amount of $2,659,923 on both notes, excluding fees, which amount represented unpaid principal, interest at a rate of $986.30 per diem, and a portion of the legal fees Tangible incurred up to that date.

On August 20, 2013, DiNardo and Belasco executed an agreement with GE and Tangible titled "Settlement Agreement, Release and Assignment of

Judgment" (the assignment agreement). The assignment agreement provided that GE, DiNardo, and Belasco "mutually agreed to resolve the claims that form[ed] the basis for the [Law Division and Chancery Division actions]" as against DiNardo and Belasco. To that end, GE "agree[d] to assign to Tangible . . . [GE's] rights, title and interest in the [j]udgment," as well as its "rights" in the Chancery Division action and the asset litigation, which were both pending at the time.

The parties further agreed that "[u]pon execution of th[e a]greement," GE would withdraw its motions in the Chancery Division action to compel DiNardo and Belasco to turn over their shares in their companies. "As part of the consideration for the [a]greement, and as an inducement . . . to enter into the [a]greement," Tangible agreed to pay GE a sum of $1.1 million. The agreement also provided that GE's assignments to Tangible constituted "further consideration for th[e a]greement." Additionally, GE's assignment of its rights in the ongoing litigation conveyed to Tangible the right to "prosecute and defend [the asset litigation and the Chancery Division action] against [plaintiff] . . . and any other individual or entity in order to recover any and all amounts due and owing under the [GE j]udgment." During the negotiations, GE was represented by the VP defendants. Tangible was apparently represented in the negotiations

by McElroy.[3]  Plaintiff was not a party to the assignment agreement and apparently had no knowledge of it at the time.

On August 19, 2013, Tangible received a wire transfer from Culinary Ventures Vending, Inc., in the amount of $1.1 million.  The following day, August 20, 2013, when the assignment agreement was executed, Tangible wired the same amount to McElroy, who then transferred it to GE.  Culinary Ventures Vending, Inc., which was dismissed as a defendant in this action on November 19, 2021, is a corporation apparently controlled by DiNardo and Belasco.  Though not specified in the assignment agreement, in exchange for the $1.1 million, Tangible apparently agreed to not pursue DiNardo and Belasco in its collection efforts regarding the Tangible loan unless it failed to collect the entirety of the remaining balance through its litigation with plaintiff.

On August 21, 2013, GE entered stipulations of dismissal with prejudice as to DiNardo and Belasco in both the Law Division and Chancery Division actions.  Subsequently, on December 9, 2013, Tangible filed a motion for judgment by confession seeking to recover the entire amount of the Tangible loan from plaintiff only.  Furthermore, after executing the assignment

---

[3]  McElroy's representation of Tangible in the deal is the subject of its own ongoing litigation.  Tangible Secured Funding, LLC v. McElroy, Deutsch, Mulvaney & Carpenter, LLP, No. L-0255-20 (Law Div. 2023).

agreement, Tangible retained the VP defendants to represent it in both collection actions against plaintiff.

On September 23, 2013, DiNardo and Belasco, acting in both their individual capacities and on behalf of their respective companies, entered into an agreement to settle various separate, unrelated lawsuits brought by DiNardo, Belasco, and their corporation against plaintiff, his son, his wife, and his various corporations. Pursuant to that agreement, DiNardo and Belasco agreed to dismiss specified claims with prejudice in exchange for $1.5 million. The $1.5 million settlement amount was paid through an officer and director's liability insurance policy (the insurance settlement). Plaintiff later certified to the judge in the asset litigation that "[t]he offer that formed the basis for [the insurance settlement] specified that payment of the $1.5 [m]illion settlement proceeds would be made to Tangible among other creditors, after payment of legal fees." However, no amount of the insurance settlement was paid to Tangible by DiNardo or Belasco.

On or around December 31, 2013, plaintiff filed a voluntary petition for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the District of New Jersey, resulting in an automatic stay. Mavroudis, slip op. at 7-8.

A-2568-21

Subsequently, on November 4, 2019, plaintiff filed a nine-count complaint against the VP defendants and the McElroy defendants alleging professional negligence and malpractice (counts one and two), malfeasance and breach of fiduciary duty (counts three and four), common law fraud (count five), negligent misrepresentation (count six), negligence (count seven), gross negligence (count eight), and a claim for treble damages under N.Y. Jud. Law § 487 (count nine). In essence, the complaint alleged that the assignment agreement was, in fact, a settlement agreement in which GE agreed to dismiss its claims against DiNardo and Belasco in exchange for $1.1 million, thereby reducing the outstanding balance of the GE judgment.

Because Tangible was the entity that paid GE, the complaint alleged that "Tangible was solicited to act as a straw man and be designated as the purported purchaser or assignee of the GE [j]udgment and thereby serve as the undisclosed agent of DiNardo and Belasco." The complaint asserted that defendants "knew that the $1.1 million paid by DiNardo and Belasco was in actuality a payment against the outstanding balance of the GE [j]udgment made . . . to release DiNardo and Belasco from or to satisfy the GE [j]udgment." Consequently, defendants' later "statements and/or certifications to tribunals that DiNardo and

Belasco were released from the GE [j]udgment without payment of any consideration" were "kn[own] to be and w[ere] false."

The complaint further alleged that defendants' conduct was in breach of defendants' "fiduciary obligations to [p]laintiff under the New Jersey Rules of Professional Conduct [(RPC)] . . . in failing to act with candor and honesty" in negotiating and structuring the assignment agreement "to enable Tangible, DiNardo and Belasco to wrongfully collect funds which . . . [p]laintiff [had] no obligation to pay." According to the complaint, as a result of defendants' alleged misconduct, plaintiff "incurred damages well in excess of $10[ million]," representing "the loss of the [p]ainting, legal fees and other costs."

On December 23, 2019, the McElroy defendants moved to dismiss pursuant to Rule 4:6-2(e) on the grounds that: (1) plaintiff's claims were barred by the litigation privilege; (2) the McElroy defendants owed no duty to plaintiff; (3) plaintiff had failed to state a claim for civil conspiracy, and (4) plaintiff's claims were barred by equitable estoppel. On February 18, 2020, the VP defendants also moved to dismiss on the grounds that: (1) plaintiff's claims were barred by the statute of limitations; (2) plaintiff's claims were alternatively barred by the doctrine of collateral estoppel; (3) the VP defendants owed no duty

11

to plaintiff; and (4) non-clients could not claim damages under N.Y. Jud. Law § 487.

On June 18, 2020, following oral argument, the judge entered an order dismissing all counts except for count five. In an accompanying written decision, the judge first rejected the arguments that the doctrines of collateral estoppel, equitable estoppel, or entire controversy barred plaintiff's claims, reasoning that the issues raised in the complaint were not identical to claims raised in the asset litigation. The judge also found that, under the circumstances, applying the doctrines would be inequitable, explaining that "[i]f defendant attorneys did in fact conceal from the court a payment by co-debtors . . . through concealed wire transfers," plaintiff would have been denied a "fair adjudication in the initial action." The judge similarly rejected the argument that plaintiff's claims were barred by the statute of limitations, finding the argument unsupported by the record.

Additionally, in declining to dismiss count five, the judge found plaintiff had sufficiently pled a fraud claim against the VP and McElroy defendants. In support, the judge considered the elements of common law fraud and determined plaintiff's pleadings addressed each element in that: (1) the VP and McElroy defendants "materially misrepresented that no consideration was paid by

DiNardo and Belasco for their releases from the [GE] judgment"; (2) defendants "had knowledge or belief of the falsity of their representations"; (3) they intended for "plaintiff [to] rely on their false representations"; (4) plaintiff did rely on those misrepresentations; and (5) plaintiff suffered "damages" as a result.

As for plaintiff's legal malpractice claim, however, the judge concluded that dismissal was warranted. After considering the governing case law, the judge determined that although plaintiff had alleged many instances of "dishonest or fraudulent conduct," he did not assert that defendants had "invited [plaintiff] to rely on" the conduct. Further, according to the judge, plaintiff's reference to numerous RPCs could not, standing alone, "form the basis of a legal malpractice cause of action." See Banco Popular N. Am. v. Gandi, 184 N.J. 161, 182 n.8 (2005). Turning to plaintiff's negligence, gross negligence, breach of fiduciary duty, and negligent misrepresentation claims, the judge determined they were "duplicative of plaintiff's legal malpractice claims" and dismissal was therefore required.

With leave of court, plaintiff filed an amended complaint on April 20, 2021, adding DiNardo, Belasco, and their corporations as defendants and raising additional claims against them. DiNardo and Belasco moved for summary judgment, arguing that plaintiff's claims were barred by the insurance settlement

agreement. The existence of the Tangible loan was revealed to the judge, apparently for the first time, through DiNardo and Belasco's submissions in support of their motion. On November 19, 2021, following a hearing, the judge entered an order dismissing DiNardo, Belasco, and the corporate defendants from the action. Plaintiff does not challenge their dismissal on appeal.

Thereafter, on December 23, 2021, the VP defendants moved for summary judgment as to count five and the McElroy defendants followed suit on January 7, 2022. On March 11, 2022, following oral argument, the judge granted the motions in an oral decision placed on the record at the conclusion of the hearing. After thoroughly recounting the factual and procedural history of the case, the judge posited plaintiff's fraud claim was that defendants

> misrepresented the balance owed by plaintiff on the [GE] judgment[] by the way that the [assignment agreement] was drafted, and by what was represented to plaintiff and to various courts.
>
> Plaintiff . . . alleges that the [assignment] agreement was a scheme and Tangible was brought into it for no legitimate purpose, but only as a strawman for a nefarious purpose.

The judge determined the core issue was "whether the $1.1 million payment to [GE] reduced the balance on the [GE] judgment," and thus "presented a question of law" suitable for summary judgment.

A-2568-21

The judge concluded "that because the purported scheme was a legal arrangement, and the [$]1.1 million payment to [GE] did not reduce the balance on the judgment, the attorney defendants did not make any misrepresentations . . . that could serve as the basis of a common law fraud claim." The judge explained that the assignment agreement was "a legal arm's-length transaction among parties to which each provided and obtained valuable consideration." In support, the judge relied on her multiple rulings in deciding prior motions.

Specifically, the judge pointed to her June 18, 2020, ruling that GE "was permitted to assign the judgment to any party, which would include Tangible, Belasco, or Di[Nardo]." The judge recalled that she had previously found "the assignment of the judgment from [GE] to Tangible was expressly permitted" by N.J.S.A. 2A:25-1, which provides that "all judgments and decrees recovered in any of the courts of this State or of the United States or in any of the courts of any other state of the United States . . . shall be assignable, and the assignee may sue thereon in his [or her] own name."

The judge also cited her November 19, 2021, decision, recalling that DiNardo and Belasco "were indebted both to [GE], under the [GE] judgment, and to Tangible, under the Tangible loan." Additionally, the judge noted that in

15

her 2021 decision, she had determined that "[t]he Tangible loan was separate and apart from any rights that Tangible subsequently acquired in the [GE] judgment." The judge noted further that the asset litigation judge had also determined that plaintiff could be held "responsible for the entire debt balance" due to the "joint and several liability" between plaintiff, DiNardo, and Belasco. Therefore, according to the judge, there was "nothing legally improper regarding the payment made to [GE] in exchange for an assignment of the judgment."

The judge further observed that the assignment agreement "provided positive legal results for the parties involved," explaining:

> [GE] received an additional $1.1 million and, ultimately, collected $2.1 million after obtaining the judgment. Tangible obtained the judgment and, ultimately, collected most of the [$]1.48 million balance on the judgment, and Belasco and Di[Nardo] received releases from further liability on their debts.
>
> Belasco and Di[Nardo] received releases from [GE] and, certainly, were no longer being pursued, at that time, by Tangible, which was their goal.

Noting that some dispute existed as to whether the $1.1 million sum had been paid in exchange for DiNardo and Belasco's release from the Tangible loan, the judge explained:

> Whether [DiNardo and Belasco] received releases from Tangible, at that time, is of no moment to this [c]ourt's decision. What does matter is that it is

16

known that the pressure of Tangible instituting litigation against Belasco and Di[Nardo], at that time, dissipated. And we know, with hindsight, that, in fact, none ever occurred.

The judge also observed that "the entire underpinning of plaintiff's case against . . . defendants, basically, falls apart based on the nature of the [assignment] agreement." As an aside, the judge commented:

> It must be stated that, with the knowledge this [c]ourt presently has, even if . . . the agreement [was] actually one with [GE], [and] the judgment [creditor] assigned the judgment to Belasco and Di[Nardo], fellow joint and several debtors, plaintiff would not be discharged pro rata as another judgment debtor.
>
> It does not matter whether [GE] was paid by Tangible or was, instead, paid by Belasco and Di[Nardo], under their agreement.
>
> As a matter of law, plaintiff does not unjustly reap the benefits of another party's payment to [GE]. There is no viable cause of action for common law fraud against the lawyer defendants, based on the entire history of what occurred as set forth in this decision.

The judge entered a memorializing order, and this appeal followed.

## II.

On appeal, plaintiff challenges both the grant of summary judgment to defendants on his common law fraud count and the dismissal with prejudice of his professional negligence-based claims pursuant to Rule 4:6-2(e).

17

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. R. 4:46-2(c); see Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted. R. 4:46-2(c); see Brill, 142 N.J. at 540.
>
> [Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016).]

Where there is no material fact in dispute, "we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). "We review issues of law de novo and accord no deference to the trial judge's [legal] conclusions . . . ." MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super. 307, 312 (App. Div. 2018).

Similarly, we "review[] de novo the trial court's determination of [a] motion to dismiss under Rule 4:6-2(e)," and therefore "owe[] no deference to the trial court's legal conclusions." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019). "[I]n reviewing a complaint dismissed under Rule 4:6-2(e)[, the] inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Green v. Morgan Props., 215 N.J. 431, 451 (2013) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). In so doing, "a reviewing court searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Id. at 452 (quoting Printing Mart-Morristown, 116 N.J. at 746). In that search, "courts must 'assume the facts as asserted by plaintiff are true and give [him or] her the benefit of all inferences that may be drawn in [his or] her favor." Banco Popular, 184 N.J. at 166 (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)).

Still, a complaint should be dismissed where it "states no claim that supports relief, and discovery will not give rise to such a claim." Dimitrakopoulos, 237 N.J. at 107. Thus, "a dismissal is mandated where the factual allegations are palpably insufficient to support a claim upon which relief

19

can be granted." Rieder v. State, Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987).

Plaintiff first argues that the judge "failed to address and appreciate that . . . the co-judgment debtors were co-guarantors, and the judgment was on that guaranty." Plaintiff contends that because of this error, the judge "did not apply the legal principle that . . . if any [guarantor] pays consideration for a release and obtains control of the judgment, their recourse as to the other co-guarantors . . . is limited to seeking only a pro rata contribution that is limited to the amount paid." (Emphasis omitted). Plaintiff asserts that by paying Tangible the funds that were ultimately used to pay GE, DiNardo and Belasco paid "consideration for a release and obtain[ed] control of the judgment." As a result, plaintiff argues, "the only amount that could have been properly pursued was [twenty-five percent] of the $1.1 [m]illion paid for the judgment, i.e., $275,000." Therefore, "actionable fraud came about" through defendants' purposeful concealment of the source of the $1.1 million sum, "refus[al] to inform [p]laintiff and the courts what amount was paid for the judgment," and their pursuit of the "full amount" of the GE judgment. We reject plaintiff's contentions.

Even viewing the facts with "the benefit of all favorable inferences to plaintiff[]," Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill, 142 N.J. at 523), plaintiff's argument is faulty in its premise. A contract's "plain language . . . is the cornerstone of the interpretive inquiry." Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020). The assignment agreement provided that Tangible would remit to GE $1.1 million as "consideration for the [a]greement, and as an inducement for the [p]arties to enter into the [a]greement." The agreement also contained three integration clauses, each stating that the assignment agreement represented the entire agreement between GE, Tangible, DiNardo and Belasco, and was intended to supersede "any and all prior agreements and understandings," be they written or oral. Thus, regardless of the source of the funds, it was ultimately Tangible, not DiNardo and Belasco, that paid consideration for DiNardo and Belasco's release from the GE judgment.

Furthermore, there is nothing in the record to suggest that DiNardo and Belasco "[o]btained [c]ontrol" of the GE judgment through the assignment. (Emphasis omitted). Neither DiNardo nor Belasco had any right to control or direct Tangible, and the assignment agreement did not give them any such right. On the contrary, the assignment agreement provided that Tangible would "be

21

solely responsible for the prosecution of the Chancery [a]ction and [the asset litigation]" and would "retain sole control over the Chancery [a]ction." It was Tangible, not DiNardo or Belasco, that in fact pursued litigation against plaintiff and ultimately received payment on the GE judgment.

Next, plaintiff argues that the judge erred in granting summary judgment because there remained genuine factual disputes as to: (1) "whether DiNardo and Belasco's $1.1 [m]illion payment . . . satisfied the GE [j]udgment and/or was consideration for their release"; (2) "whether Tangible was acting as a straw man and alter ego for [DiNardo and Belasco] pursuant to a scheme"; and (3) whether defendants "knew or should have known that surety law preclude[d] collection of amounts in excess of the pro-rata contribution" in the asset litigation.

"To defeat a motion for summary judgment, the opponent must 'come forward with evidence that creates a genuine issue of material fact.'" Sullivan v. Port Auth. of N.Y. & N.J., 449 N.J. Super. 276, 282-83 (App. Div. 2017) (quoting Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014)). "Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016)

22

(alterations in original) (quoting Brill, 142 N.J. at 529).  Here, plaintiff has failed

"to show by competent evidential material that a genuine issue of material fact

did exist."  Merchs. Express Money Ord. Co. v. Sun Nat'l Bank, 374 N.J. Super.

556, 563 (App. Div. 2005).

First, there is no genuine factual dispute as to whether the $1.1 million GE

received pursuant to the assignment agreement "satisfied the GE [j]udgment."

"Ordinarily, the intention of the parties determines whether a transfer of money

by a third person to a creditor constitutes a discharge or purchase of an

underlying debt or note."  Del. Truck Sales, Inc. v. Wilson, 131 N.J. 20, 29

(1993).  Here, the assignment agreement language clearly indicates that the $1.1

million payment did not satisfy the GE judgment.

As the judge noted, the assignment agreement provided that the $1.1

million GE received was "part of the consideration" for the assignment of GE's

"rights, title and interest in the [j]udgment."  The agreement defined the value

of the judgment assigned as $1,477,882.  The $1.1 million payment was not

identified in the assignment agreement as constituting satisfaction for DiNardo's

and Belasco's liability for the GE judgment, and the balance remained

unchanged by the assignment.  See Quinn v. Quinn, 225 N.J. 34, 45 (2016)

("[W]hen the intent of the parties is plain and the language is clear and

unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result."). Plaintiff's "speculation" as to any side agreements between GE, DiNardo, Belasco, and Tangible are both belied by the record and "do[] not meet the evidential requirements which would allow [him] to defeat a summary judgment [motion]." Merchs. Express Money Ord. Co., 374 N.J. Super. at 563.

Second, aside from plaintiff's own bald assertions, there is no credible evidence in the record to support plaintiff's claim that Tangible acted as a mere "straw man" for DiNardo and Belasco. "Neither fanciful arguments nor disputes as to irrelevant facts will make an issue such as will bar a summary decision." Ibid. The record shows that Tangible is an independent corporation, separate from any of DiNardo's or Belasco's corporate holdings. Tangible acted in its own interests when it entered the assignment agreement for its own benefit. Indeed, in the amended complaint, plaintiff acknowledged that DiNardo and Belasco owed a separate debt to Tangible, sought to induce Tangible to agree to accept the GE judgment in lieu of direct payment for those debts, and agreed that they would "repay any shortfall remaining" as to the Tangible loan "after Tangible's collection activities" in the asset litigation.

Third, as an independent third-party creditor, Tangible obtained an assignment as permitted under N.J.S.A. 2A:25-1, thereby becoming entitled to "all rights and remedies for collection which the assignor as the holder of such judgments possessed." Roth v. Gen. Cas. & Sur. Co., 106 N.J.L. 516, 518 (E. & A. 1929). Contrary to plaintiff's assertion, Tangible was not a guarantor of the underlying debts. Gen. Elec. Cap. Corp., slip op. at 3. Therefore, the principles of exoneration and contribution upon which plaintiff relies are inapplicable to Tangible's right to recover. Additionally, Tangible's payment was not a settlement of the GE judgment, but rather a purchase. Thus, the authority upon which plaintiff relies is inapposite to the facts of this case. See D'Ippolito v. Castoro, 51 N.J. 584, 589-92 (1968) (discussing duties between co-guarantors); Republic Bus. Credit Corp. v. Camhe-Marcille, 381 N.J. Super. 563, 569-71 (App. Div. 2005) (discussing obligor's duty of contribution with respect to settlement amounts paid by a joint obligor).

Moreover, the assignment agreement gave Tangible sole and exclusive control over the ongoing collection efforts. Plaintiff contests Tangible's sole and exclusive control by pointing to an email exchange between defendants O'Connor, then representing Tangible, DiNardo, and Belasco, and Cohen, then representing GE. Specifically, O'Connor asked Cohen whether GE "care[d]

whether DiNardo and Belas[c]o [were] the assignees of the judgment as opposed to [Tangible's director]," to which Cohen replied that he had been informed by a third party that GE "want[ed] a different person/entity to be the assignee."  The final email sent by O'Connor to Cohen stated, "I'll reach out to him.  If they don't care and [GE] doesn't care it will be [DiNardo] and [Belasco].  Otherwise I'll be directed by what he tells me and will revise the docs accordingly and circulate."

In evaluating a summary judgment motion, courts must consider "the evidential standard governing the cause of action."  Bhagat v. Bhagat, 217 N.J. 22, 38 (2014).  Here, plaintiff's burden of proof for his common law fraud claim is "clear and convincing evidence" that Tangible was acting as an alter ego for DiNardo and Belasco, thereby making any statements to the contrary false.  DepoLink, 430 N.J. Super. at 336 (quoting Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 395 (App. Div. 1989)).  The email exchange does not meet that standard.

Plaintiff's only other evidence in support of the purported scheme consists of statements made by or against defendants in pleadings in other matters, as well as statements made by Tangible's newly retained counsel at oral argument

on this motion.[4]  However, plaintiff has not supplied any credible evidence to suggest that those statements were anything other than non-binding litigation positions advanced by counsel.[5]  "It is axiomatic that counsel's arguments do not constitute evidence."  Stewart v. N.J. Tpk. Auth./Garden State Parkway, 249 N.J. 642, 659 (2022).  Consequently, even with the benefit of all favorable inferences, plaintiff still failed to demonstrate a genuine issue of fact sufficient to overcome summary judgment.

There being no genuine issue of material fact, we now turn to whether the judge correctly interpreted the law.  DepoLink, 430 N.J. Super. at 333.  This review begins by "identifying the elements of the cause of action and the standard of proof governing th[e] claim."  Bhagat, 217 N.J. at 39.  To establish a claim of common law fraud, a plaintiff must demonstrate:  "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by

---

[4]  Although Tangible is not a party to plaintiff's fraud claims, Tangible's malpractice suit against the McElroy defendants was consolidated with this matter for purposes of discovery, and therefore Tangible's counsel was present at oral argument on March 11, 2022.

[5]  A party is only bound to a previous position if that position was successful in earlier litigation.  Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 606-07 (App. Div. 2000).  That rule is generally inapplicable where "the first action was concluded by a settlement."  Id. at 607.  The litigation between VP and Tangible ultimately settled, and Tangible's malpractice claim against McElroy remains pending.

A-2568-21

the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Banco Popular, 184 N.J. at 172-73 (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)). Importantly, "fraud is never presumed." Weil v. Express Container Corp., 360 N.J. Super. 599, 613 (App. Div. 2003). Instead, a plaintiff "must prove each element by 'clear and convincing evidence.'" DepoLink, 430 N.J. Super. at 336 (quoting Stochastic Decisions, Inc., 236 N.J. Super. at 395).

Applying these principles, we agree with the judge that plaintiff failed to establish the elements of common law fraud. Plaintiff's failure to establish by clear and convincing evidence that the $1.1 million paid to GE was or should have been credited towards the GE judgment is fatal to his claim that defendants misrepresented the outstanding balance. Similarly, plaintiff's failure to establish that Tangible acted as an agent for DiNardo and Belasco is fatal to his claim that defendants misrepresented Tangible's role in the assignment or the effect of Tangible's purchase. In the absence of a material misrepresentation, plaintiff cannot establish defendants' knowledge or belief of falsity.

Additionally, because the alleged misrepresentations upon which plaintiff's claims are premised were made by opposing attorneys in adversarial

28

litigation, plaintiff cannot demonstrate reasonable reliance on those statements. See Banco Popular, 184 N.J. at 182 (holding that bank could not establish negligent misrepresentation claim against attorney absent a "relationship . . . that substitute[s] for the privity requirement"); Kaufman v. i-Stat Corp., 165 N.J. 94, 109 (2000) ("The element of reliance is the same for fraud and negligent misrepresentation."). Any one of these deficiencies standing alone is sufficient to support the judge's grant of summary judgment.

Plaintiff argues that summary judgment was premature in this case because discovery in the form of "depositions, interrogatories, [and] review of the attorneys' files and documents" is required to determine whether the $1.1 million sum was used to satisfy the GE judgment or the Tangible loan.

"Generally, summary judgment is inappropriate prior to the completion of discovery." Hyman v. Rosenbaum Yeshiva of N.J., 474 N.J. Super. 561, 573 (App. Div. 2023) (quoting Wellington v. Est. of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003)). However, "[a] motion for summary judgment is not premature merely because discovery has not been completed." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015). Rather, a party opposing the motion based on incomplete discovery must show "with some degree of particularity the likelihood that further discovery will supply the missing

elements of the cause of action." Friedman v. Martinez, 242 N.J. 449, 472-73 (2020) (internal quotation marks omitted) (quoting Badiali, 220 N.J. at 555).

Here, plaintiff has failed to meet that standard. First, there is no genuine factual dispute as to whether the $1.1 million went towards satisfying the GE judgment, and whether it was used for the Tangible loan is immaterial to plaintiff's fraud claim since the alleged fraud relates to the GE judgment. Second, plaintiff's argument simply beggars belief given the lengthy and expansive history of the litigation. Despite plaintiff's argument to the contrary, discovery has been well underway on these issues for nearly three years. See Friedman, 242 N.J. at 475 (holding summary judgment was not premature where plaintiffs "had not offered proof from which one could reasonably infer" facts in their favor "[n]early three years after the filing of the initial complaint, despite a motion for summary judgment and extensive argument about the state of the record").

Plaintiff argues that the documents he seeks are "essential in this action as [p]laintiff . . . believes it would uncover whether the $1.1 [m]illion satisfied the GE [j]udgment or not, the actual consideration paid for . . . GE's release of DiNardo and Belasco[,] and other information regarding . . . Tangible's and . . . [d]efendants['] roles in the scheme." However, prior discovery orders

A-2568-21

already granted plaintiff the access he seeks and plaintiff "has not shown that any outstanding 'discovery [would] supply the missing elements of the cause of action.'" Id. at 475 (alteration in original) (quoting Badiali, 220 N.J. at 555). Given the present record, "it is readily apparent that continued discovery w[ill] not produce any additional facts necessary to a proper disposition of the motion [for summary judgment]." DepoLink, 430 N.J. Super. at 341 (citing R. 4:46-5).

As our Supreme Court has recognized,

> [s]ummary judgment should be granted, in particular, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."
>
> [Friedman, 242 N.J. at 472 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).]

Such is the case here.

Turning to the Rule 4:6-2(e) dismissal, plaintiff argues the judge erred in finding that his lack of attorney-client relationship with either of the defendants barred his legal malpractice claims against them. Plaintiff asserts that his claims were not barred because defendants owed "an independent duty" to him.

"A legal malpractice claim is 'grounded in the tort of negligence.'" Nieves v. Off. of the Pub. Def., 241 N.J. 567, 579 (2020) (quoting McGrogan v. Till,

31

167 N.J. 414, 425 (2001)). "[A] legal malpractice action has three essential elements: '(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff.'" Morris Props., Inc. v. Wheeler, 476 N.J. Super. 448, 459 (App. Div. 2023) (quoting Jerista v. Murray, 185 N.J. 175, 190-91 (2005)). Traditionally, "[t]he existence of an attorney-client relationship is, of course, essential to the assertion of a cause of action for legal malpractice." Froom v. Perel, 377 N.J. Super. 298, 310 (App. Div. 2005) (citing Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996)).

Nevertheless, our Supreme Court has recognized that "[p]rivity between an attorney and a non-client is not necessary for a duty to attach 'where the attorney had reason to foresee the specific harm which occurred.'" Innes v. Marzano-Lesnevich, 435 N.J. Super. 198, 213 (App. Div. 2014) (alteration in original) (quoting Est. of Albanese v. Lolio, 393 N.J. Super. 355, 369-69 (App. Div. 2007)), aff'd as modified on other grounds, 224 N.J. 584 (2016). In that regard, plaintiff is correct that the absence of an attorney-client relationship between himself and the VP or McElroy defendants does not necessarily bar his malpractice claims against them. Indeed, the judge recognized as much in her

32

June 18, 2020, opinion dismissing plaintiff's claims. Nonetheless, we agree with the judge that plaintiff's failure to establish that defendants owed him a duty are fatal to his particular claims.

Our Supreme Court has repeatedly emphasized that "the grounds on which any plaintiff may pursue a malpractice claim against an attorney with whom there was no attorney-client relationship are exceedingly narrow." Green, 215 N.J. at 458. As such, there are "relatively few situations" in which "a nonclient may file suit against another's attorney." LoBiondo v. Schwartz, 199 N.J. 62, 101 (2009). In Petrillo v. Bachenberg, 139 N.J. 472, 485 (1995), the Court recognized that "a lawyer's duty may run to third parties who foreseeably rely on the lawyer's opinion or other legal services." In that case, a real estate buyer was provided a misleading test report that was prepared by the seller's attorney and allegedly induced the buyer's purchase of the property. Id. at 474.

In finding that the attorney had a duty to the buyer, the Court explained that "[t]he objective purpose of documents such as opinion letters, title reports, or offering statements, and the extent to which others foreseeably may rely on them, determines the scope of a lawyer's duty in preparing such documents." Id. at 485. Applying that principle to the seller's attorney's report, the Court concluded that the attorney "should have foreseen that a prospective purchaser

33

would rely on the . . . report in deciding whether to sign a contract and proceed with engineering and site work." Id. at 487. Furthermore, by providing the report and subsequently representing the seller in the sale, the attorney "assumed a duty to [the buyer] to provide reliable information" and "[f]airness suggests that he should bear the risk of loss resulting from the delivery of a misleading report." Ibid.

"[T]he rule announced in Petrillo has been applied rather sparingly, . . . [but] [i]t is not . . . the only basis on which [the Court] ha[s] recognized the potential for a direct claim against an attorney by a nonclient." Innes, 435 N.J. Super. at 213 (alterations and omissions in original) (quoting LoBiondo, 199 N.J. at 102). In Banco Popular, an attorney was accused by the plaintiff bank of negligent misrepresentation, first by facilitating his client's asset transfer and second by "negotiating the terms of the . . . loan and guaranty and . . . issuing an opinion letter in connection therewith." 184 N.J. at 182-83. The Court noted that the bank's claims arising from the attorney's role in facilitating the transfer "exceed[ed] the reach of Petrillo in nearly every respect." Banco Popular, 184 N.J. at 182. However, the Court held that the claims arising from the attorney's role in the negotiations could proceed. Id. at 183.

In differentiating the claims, the Court explained that "the duty recognized in Petrillo arose because an attorney, engaged in dealings involving a non-client, made misrepresentations to the non-client knowing that they would induce her reliance." Banco Popular, 184 N.J. at 182. The Court explained that the Petrillo Court "never suggested, even obliquely," that a duty arose in circumstances "involving no representations, no reliance, and a remote third party with whom the attorney had no relationship." Banco Popular, 184 N.J. at 182. According to the Banco Popular Court, although the bank could make no claims against the attorney for facilitating the asset transfer because the attorney made "no representations to the [b]ank seeking to induce reliance, [and] the entire transaction was intended to be, and in fact was, carried out without the [b]ank's knowledge," the attorney's role in negotiations, on the other hand, "st[ood] on [a] different footing" because "representations in negotiations are made to induce reliance." Id. at 182-83.

Here, plaintiff's malpractice claims are based on alleged "false statements of material facts . . . regarding the outstanding balance of the GE [j]udgment, misrepresent[ations] that DiNardo and Belasco were released without . . . any consideration, fail[ure] to disclose the $1.1 [m]illion payment . . . , the satisfaction of the GE [j]udgment," and misrepresenting "'straw man' Tangible

A-2568-21

as the assignee of the GE [j]udgment."  Plaintiff asserts defendants intended to induce his reliance using their "certifications, affidavits and statements in open court."  Applying the principles articulated in <u>Banco Popular</u> and <u>Petrillo</u>, plaintiff argues that defendants' "wrongful conduct and representations 'made to induce reliance' . . . results in a duty to . . . [p]laintiff as a third-party non-client."

Plaintiff's arguments are unavailing.  Unlike <u>Petrillo</u> and <u>Banco Popular</u>, the alleged misrepresentations here were made during adversarial litigation, and thus were not "intended to induce a specific non-client[']s reasonable reliance." <u>Banco Popular</u>, 184 N.J. at 180.  Although lawyers have an obligation to speak truthfully on issues of material fact, <u>see</u> RPC 3.3, RPC 4.1, an attorney's "primary duty is to be a zealous advocate for his or her own client," <u>LoBiondo</u>, 199 N.J. at 73.  As such, we reject plaintiff's contention that a duty is owed to a non-client in these circumstances.  <u>Cf.</u> <u>Davin, L.L.C. v. Daham</u>, 329 N.J. Super. 54, 75-77 (App. Div. 2000) (holding that attorney violated duty to non-client property lessors by inserting covenant of quiet enjoyment in lease contract despite knowing that the property was in foreclosure); <u>Atl. Paradise Assocs. v. Perskie, Nehmad & Zeltner</u>, 284 N.J. Super. 678, 685 (App. Div. 1995) (holding that attorney has a duty to prospective purchasers to make accurate representations in a public offering statement); <u>R.J. Longo Constr. Co. v.</u>

Schragger, 218 N.J. Super. 206, 208-10 (App. Div. 1987) (holding that township attorneys breached duty to non-client contractors by failing to obtain necessary easements before giving notice to begin construction, contrary to terms of contract).

We also reject plaintiff's reliance on the RPCs to sustain his cause of action. "[S]tanding alone, a violation of the RPCs does not create a cause of action for damages in favor of a person allegedly aggrieved by that violation." Meisels v. Fox Rothschild LLP, 240 N.J. 286, 299 (2020). Consequently, "[e]ven indulgently read, plaintiff['s] pleading does not suggest any of the narrow grounds that would give rise to a cause of action against an attorney with whom one has no attorney-client relationship." Green, 215 N.J. at 460.

Plaintiff urges that "[c]onsiderations of fairness and public policy concerning the candor, responsibility and truthfulness of lawyers" requires that "lawyers . . . be held to the highest standards of conduct, fair dealings, and accountability even to adversaries in litigation." Plaintiff therefore asks us to adopt a rule permitting malpractice claims by non-clients in the presence of "fraud, collusion and malicious acts." Given the dearth of credible evidence substantiating his allegations of misconduct, we decline plaintiff's invitation. Even if there was supporting evidence, plaintiff's allegations are better suited

for adjudication in a disciplinary action against the attorneys, instead of a direct cause of action. See Brundage v. Est. of Carambio, 195 N.J. 575, 603 (2008) (noting the "preference for penalizing an attorney through our disciplinary system").

As our Supreme Court has acknowledged, "[o]ur disciplinary rules and our frivolous litigation sanctions have been effective in controlling the behavior of attorneys, without also permitting anyone to pursue separate causes of action based thereon." LoBiondo, 199 N.J. at 103. Indeed, "our system has been recognized as 'one of the most demanding disciplinary systems in the nation.'" Baxt v. Liloia, 155 N.J. 190, 203 (1998) (quoting James R. Zazzali, Disciplining Attorneys: The New Jersey Experience, 1 Geo. J. Legal Ethics 659, 661 (1988)). "Few members of the bar, knowing the force of the disciplinary sanctions under the RPCs . . . , engage in the sorts of . . . [conduct] that would also call for the creation of a remedy available through a direct cause of action." LoBiondo, 199 N.J. at 103. Moreover, given the lengthy and contentious history between the parties, a direct cause of action would serve no legitimate purpose but would instead "become a weapon used to chill the entirely appropriate zealous advocacy on which our system of justice depends." LoBiondo, 199 N.J. at 101.

Finally, plaintiff contends that the judge erred in dismissing his remaining claims as duplicative of the malpractice claim because: (1) the malfeasance and breach of fiduciary duty claims (counts three and four) "are based on allegations that [defendants] improperly received and released the $1.3 [m]illion" recovered in the asset litigation; and (2) the negligence, gross negligence, and negligent misrepresentation claims (counts six, seven, and eight) "are not based on a deviation from the standard of care of attorneys." We disagree.

First, plaintiff's attempt to distinguish the malfeasance and breach of fiduciary duty claims based on receipt of the $1.3 million from the asset litigation fails. Count three alleged malfeasance and breach of fiduciary duty against the McElroy defendants. However, it was the VP defendants who requested and received those funds from the Trust Fund Unit. Second, plaintiff failed to plead any facts to support his claim that either the McElroy or the VP defendants "owed a fiduciary duty to [p]laintiff" to support counts three or four. See Scheidt v. DRS Techs., Inc., 424 N.J. Super. 188, 193 (App. Div. 2012) (noting that to survive a motion to dismiss, "the essential facts supporting [a] plaintiff's cause of action must be presented" and "conclusory allegations are insufficient").

39

Clearly, defendants did not agree to hold those funds as trustees or escrow agents. See Innes, 224 N.J. at 598 (holding defendant attorneys had fiduciary duty to adverse non-client when holding property "as trustees and escrow agents"). Nor can plaintiff credibly claim that defendants were obligated to hold or dispose of those funds for his benefit. See F.G. v. MacDonell, 150 N.J. 550, 563 (1997) ("A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship."). Absent a fiduciary duty, defendants did not breach any duty to plaintiff in their disposition of the $1.3 million. Compare Meisels, 240 N.J. at 303 (holding law firm's disposition of funds as directed by client was not a breach where no fiduciary duty was owed to plaintiff) with Innes, 224 N.J. at 598 (finding attorney's release of escrowed property to client at client's request was a breach of fiduciary duty to adverse party for whose benefit the property was also being held). Therefore, counts three and four were properly dismissed.

As for counts six, seven, and eight, by definition, plaintiff's claims encompass defendants' role and status as attorneys and regardless of how plaintiff labeled his causes of action, his claims implicated the standard of care applicable to attorneys. The gravamen of the claims is that defendants owed

him a general duty to speak truthfully in their dealings with plaintiff. However, the existence of that general duty is derived from considerations of fairness, which requires considering, in part, defendants' relationship to plaintiff. See Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993) (explaining that "[w]hether a person owes a duty of reasonable care toward another" involves "identifying, weighing, and balancing several factors," including "the relationship of the parties").

For a plaintiff "[t]o recover under a negligence theory, the defendant must owe a duty to the plaintiff." Werrman v. Aratusa, Ltd., 266 N.J. Super. 471, 474 (App. Div. 1993). To the extent plaintiff alleged that defendants were "under a duty to act for or give advice for [his] benefit," F.G., 150 N.J. at 563, or "a duty of care . . . to act with candor and honesty," the source of that duty was defendants' role as Tangible's attorneys. As such, the judge correctly concluded that counts six, seven, and eight were duplicative of plaintiff's malpractice claims. See Aden v. Fortsh, 169 N.J. 64, 79 (2001) (observing that a claim arising out of a breach of a professional's fiduciary duty to their client is "essentially one of professional malpractice"); see also Couri v. Gardner, 173 N.J. 328, 340 (2002) (concluding that whether an action asserts a claim of professional malpractice depends on "the nature of the legal inquiry,"

particularly whether the "factual allegations require proof of a deviation from the professional standard of care"); <u>Singer v. Beach Trading Co.</u>, 379 N.J. Super. 63, 76 (App. Div. 2005) (explaining that a cause of action for negligent misrepresentation requires the plaintiff to be a "'person or one of a limited group of persons for whose benefit and guidance' the information is supplied." (quoting <u>Restatement (Second) of Torts</u> § 552 (Am. L. Inst. 1977))). Therefore, the counts were properly dismissed because they suffered from the same defects as the malpractice claim—the failure to allege facts sufficient to establish that plaintiff was owed a duty.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2568-21